# WILLIAM C. WILSON

### v.

# WILLIAM B. LYON.

1. NOTICE—*what deemed sufficient, of a vendor's lien upon real estate.* L conveyed by deed to W certain real estate, taking W's note for the purchase money. Soon after, W executed a mortgage on the premises to his brother A, to secure the sum of $10,000, and afterwards satisfaction was entered on the mortgage, and an absolute conveyance of the premises made by W to A. Subsequently, L recovered judgment on the note against W : *Held,* in a suit brought by L against W and A, to enforce his lien as vendor, that A had sufficient notice of L's lien, it appearing from the evidence, that A, prior to his purchase from W, was fully informed by L of the conveyance to W, of the consideration therefor, and the terms of payment, and that no security had been taken.

2. VENDOR'S LIEN—*when not discharged.* And in this case it cannot be said, that L, by taking an assignment of a policy of insurance on the life of W, after his conveyance to A, thereby waived his lien, as the proof clearly shows that L did not take such policy as independent security.

3. EVIDENCE—*vendor's lien—burden of proof of a waiver.* In such case, the burden of proof of a waiver, rests upon the party alleging it.

4. VENDOR AND PURCHASER—*vendor's lien—against whom attaches.* And this lien attaches against the vendee, and all persons claiming as volunteers, or with notice under him.

5. SAME—*when proof is doubtful concerning the waiver—lien attaches.* And if it is even doubtful whether other and independent security has been taken, the lien of the vendor still attaches.

6. SAME—*vendor's lien—how far protected.* So vigilant are courts of equity to protect a vendor of real estate, that, although an absolute conveyance is made, and no mortgage or other security taken, still, in the hands of the vendee, or a subsequent purchaser with notice, the vendor has a lien on the land for his money. *Dyer* v. *Martin,* 4 Scam. 147.

7. SAME—*secret liens—not favorites with the courts.* Liens of this character are by no means favorites of the courts, yet when they are shown to exist, they will be protected and enforced.

APPEAL from the Circuit Court of Woodford county; the Hon. S. L. RICHMOND, Judge, presiding.

The opinion states the case.

Mr. A. E. STEVENSON, for the appellant.

Mr. E. N. POWELL, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery, in the Woodford Circuit Court, by William B. Lyon, and against William C. Wilson, to enforce a vendor's lien, and a decree accordingly.

To reverse this decree, the defendant appeals to this court.

It appears complainant sold by deed to John M. Wilson, certain valuable real estate, in the town of Eureka, on which was a flouring mill, taking Wilson's notes for the purchase money. Suit was brought on the notes and judgment recovered against Wilson for the amount. In the mean time, John M. executed a mortgage to his brother, William C. Wilson, the appellant, to secure the sum of ten thousand dollars. Afterwards satisfaction was entered on the mortgage, and an absolute deed executed by John M. to William C. Wilson for the premises.

The case turns upon the fact of notice to William C. before he took the deed of mortgage, and subsequent absolute deed from his brother, that he had not paid Lyon for the property.

. That he had such notice, is clearly proved by the testimony of Lyon. William C. Wilson is a resident of St. Louis, and in the spring of 1864, after the sale by Lyon to John M.; Lyon visited William in St. Louis, and there, in the conversation between them, he asked if John had paid all up for the mill. Lyon told him that he had not; that he sold the mill to him for seven thousand dollars, one thousand dollars in cash and his six notes for one thousand dollars each, due in one, two, three, four, five and six years from date, with ten per cent. interest. William then asked him if he had taken any security. Lyon answered no, that he promised if he got

into any difficulty he would make Lyon secure on the mill. This conversation is not denied, and was notice. And after the second note became due, Lyon had a conversation with William, at his house in St. Louis, relative to his paying the note, John having said William would pay the notes. This was early in February, 1864. In this interview William admitted it was the agreement, when he took the deed from his brother, that he was to pay the notes.

All this furnishes abundant proof of notice of the lien.

Another point made by appellant is, that the vendor took other and independent security, and thus waived his lien.

. It seems John M. Wilson, after he had conveyed the property to his brother, assigned to Lyon a policy on his life. John M., in his testimony, says, he assigned it for the purpose of securing the notes; that the policy was on the endowment plan, and became due at the end of fifteen years or at his death.

Lyon, in his testimony, says there was nothing said between them when Wilson gave him the policy; that he did not take it as collateral, but as security only that his brother would meet the paper as it became due, as John had told him his brother would certainly do; that he, himself, did not consider the policy as any security whatever.

A few facts show this policy could not have been taken and was not taken as security. The deed from Lyon and the notes from Wilson were executed on the 16th of January, 1864. On the 19th of May, 1865, John mortgaged the premises to his brother William, and on the 30th of that month, he handed over to Lyon this policy. Why this was done is fully explained by Lyon in his testimony. He said he had a conversation with John in the latter part of May, 1865, about his giving the mortgage to his brother, having heard he had given such a mortgage. Lyon said to him, how could you have done such a wicked thing as that after making me such promises as you did. John replied, you need have no fears, for when I made the mortgage to my brother, it was a part of

the consideration that he should pay the notes as they became due, and he would do so and was abundantly able to do so; and to make Lyon perfectly easy he would give him a life policy for five thousand dollars, running for fifteen years.

It will be remembered, that in the month of February, 1864, preceding this conversation, Lyon visited St. Louis and had the interview with William above referred to, when William was distinctly informed Lyon had taken no security on the sale of the property. William C. Wilson then knew, before he took his deed, there was a vendor's lien upon it, and the burden of proof of a waiver rests upon the party alleging it. 2 Story's Eq. Jur. sec. 1,224. And this lien attaches against the vendee and all persons claiming as volunteers or with notice under him. Ib. sec. 1,225.

There is no proof this policy was taken or given to displace the lien which, at the time of giving it, had attached to the premises. If it is even doubtful it was so taken, the lien still attaches. Sec. 1,224, *supra.*

So vigilant are courts of equity to protect a vendor of real estate, although an absolute conveyance is made, and no mortgage or other security taken, and the property remains in the hands of the vendee or a subsequent purchaser with notice, the vendor has a lien on the land for his money. *Dyer* v. *Martin,* 4 Scam. 147.

These secret liens are by no means favorites of the courts, yet when they are shown to exist, they must be enforced. This is a plain case. Justice and equity favor it, the proofs establish it, and the decree allowing the lien was proper and we affirm it.

*Decree affirmed.*