HARVEY S. CLARK *et al.*

*v.*

IMLAY MOORE *et al.*

1. CHANCERY—*of the effect of a decree obtained enforcing the equitable
lien of one where there are others holding superior or equal equitable liens who
are not made parties.* If a person holding an equitable lien on property
were to obtain a decree enforcing his lien without making a superior lien
holder a party to the proceeding, he would hold subject to the superior
lien as though he had not obtained his decree, or if he failed to make an

18—64TH ILL.

equal equitable lien holder a party, they would hold precisely as they did before the decree; and ' a court of equity will recognize and enforce the rights of those not made parties the same as though the decree had not been rendered, unless a sale has been had under it and the rights of innocent *bona fide* purchasers have intervened, which will in some cases be protected; and even in that case the person obtaining the decree would be required by a court of equity to recognize the equities of the other equal lien holders.

2.  MECHANICS' LIENS—*of the powers of the court in enforcing them.* In carrying into effect the provisions of the statute in relation to mechanics' liens, for the purpose of securing and enforcing the rights of parties, the court has the same power, and it is made its duty under the statute, to adopt the same rule of decision in cases of like character applicable to courts of chancery, and for the purpose it may entertain any bill or proceeding and render any decree that a court of chancery might.

3.  SAME—*jurisdiction of the court to set aside a former decree.* Where, in a suit to enforce a mechanic's lien, a party who held a lien on the property as a material-man was not made a party, and a decree was rendered establishing the rights of the other lien holders, and a sale was had under the decree, at which the petitioners became the purchasers of the property, subject to the right of redemption, upon the filing of a petition by the lien holder not made a party to the original proceeding, it was *held,* that his rights were in no way affected by the decree or the sale, and the court had power to afford him relief, notwithstanding the decree and sale, and establish and enforce his lien; and so long as the title to the property remained in the parties to the former suit, the court had power to vacate the sale and order the property to be re-sold, especially when it was shown that it sold for only about one-ninth of its value.

4.  SAME—*of the rights of the parties on setting aside a former decree.* When the decree and sale were set aside, the petitioner was then at liberty to contest the amount or validity of any or all of the liens being asserted against the property precisely as he could have done as a party to the original proceeding. If the allowance by the former decree of too large a lien in favor of any one of the claimants, in the opinion of the petitioner, endangered any portion of his own claim, he, for his own protection, had the right to resist it and have it reduced to its just amount.

·5.  SAME—*when the lien attaches.* A mechanic's lien attaches from the time when the contract is made to make the improvement. It is a secret lien, attaching simply by furnishing labor or materials in constructing the building. The laborer or material-man is required to do no other act to secure his lien; he is not required to give notice, to record his claim or do any other act to render his lien operative.

6.  After the lien has attached, all persons deal with the property at their peril. It is the duty of those purchasing or taking liens on the

property to ascertain, as best they may, whether it is incumbered with mechanics' liens, and they take the property subject to such liens.

7. SAME—*waiver of the lien.* Where a laborer or material-man receives security collateral to the property improved, whether the security be personal or a mortgage on or pledge of other property or chose in action, the law presumes that it was intended to waive or release the lien on the premises, but an effort to acquire a more specific and exclusive lien on the premises improved will not be considered as a manifestation of such an intention.

8. Nor will the receiving of an assignment of an insurance policy by the laborer or material-man, without evidence that he received it with such intention, operate as a release or waiver of his lien.

9. SAME—*of the adjustment of different liens.* In a proceeding to enforce a mechanic's lien, where there are prior incumbrances on the property in the shape of mortgages, in adjusting the rights of the parties, any enhanced value of the property produced by the payment of money by the owner of the premises for labor and materials furnished by others than the parties to the suit, during the progress of the improvements, should be applied first to the satisfaction of the mortgages on the property, and if any portion of the fund thus created should remain, it should then be applied in satisfaction of the liens for labor and materials. And the same rule applies as to such enhanced value in the case of liens created by mortgage subsequent to the time when the mechanic's lien attaches.

APPEAL from the Circuit Court of La Salle county; the Hon. EDWIN S. LELAND, Judge, presiding.

Messrs. CROOKER & HUNTER, and Messrs. ELDRIDGE & LEWIS, for the appellants.

Messrs. BUSHNELL & BULL, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that one George Wells, of the city of Mendota, in the year 1869, erected and put into operation an oil mill in that place; that appellees furnished $10,000 worth of machinery for the purpose of completing the factory; that Clark, Davis and Dawson furnished materials for the structure, and Gilmore and Price held mortgages on the property. Clark and Davis filed a petition against Wells to enforce

276 CLARK *et al. v.* MOORE *et al.* [Sept. T.,

Opinion of the Court.

a mechanic's lien, and Dawson became a party, he filing a bill of interpleader; and at the February term, 1870, of the circuit court of La Salle county, a decree was rendered in their favor, and against the lots, and ordering their sale. In that decree the court found and established their rights, and those of Price and Gilmore as mortgagees of the property. To that proceeding appellees were in nowise made parties.

Under that decree the premises were sold and bid in by appellants' attorney on the 15th of April, 1870, and the certificate of purchase was assigned by him to them subsequent to that time.

After the decree and sale, appellees, with the assent of Wells, were proceeding to remove the machinery from the oil mill in which Wells had placed it, but were prevented by an injunction issued out of and under an order of the county court of La Salle county.

Appellees, on the 27th of January, 1871, filed this petition, in which they set up their lien as material-men; charge they were not made parties to the proceeding instituted by appellants, and had no notice thereof; charge that they were purposely kept ignorant of the proceeding, and that appellants fraudulently obtained a decree for more than was due them, and that the property sold for a sum greatly less than its value. They made appellants and others defendants, pray for answers not under oath, and that the liens of appellants be declared subordinate to theirs; that an account be taken, and it be ascertained how much was due to appellants; that their lien be decreed subject to that of appellees; that the decree in the former mechanic's lien suit be set aside, and if necessary they be permitted to interplead; that the sale be set aside, or if that could not be done, then they be allowed to participate *pro rata* in the proceeds of the sale under the former decree, and for general relief.

On a hearing in the court below, a decree was rendered setting aside the sale, and appellees were found to hold a lien on the premises to the extent of their claim; the rights of all

the parties were established and the property ordered to be sold to satisfy the several liens; and the record is brought to this court on appeal, and a reversal is asked.

It is urged that the circuit court does not have jurisdiction to entertain a bill, under the statute, to set aside a former decree for any reason, and to let in parties in interest to participate in the fund upon which they have a mechanic's or other lien. This case is unembarrassed with any question as to the rights of third parties purchasing at the master's sale, as the property was purchased for and is held by the complainants in the former suit. The parties holding the certificate of purchase are the same persons who were parties to the first suit. The question is, whether their rights have been so far changed by that proceeding that the purchasers have acquired an advantage against which the court is powerless to afford relief.

The 23d section of the Mechanic's Lien Law declares that in proceedings under that act the courts are vested with all powers of courts of chancery, and shall be governed by the rules of proceeding and decisions thereof, so far as the same are applicable and may be necessary to carry into full and complete effect the provisions of that statute. This is a broad and comprehensive delegation of power to the courts. In carrying into effect the provisions of the statute, they may entertain any bill or proceeding, and render any decree, that a court of chancery might, to secure and enforce the rights of parties. Then if a court of equity has power, after a sale on the foreclosure of one of two mortgages which are equal liens, and the other mortgagee has not been made a party to the suit for foreclosure, to afford relief and to adjust the equities of the parties; or if a court of chancery may adjust the rights of two persons holding equal equitable liens on the same property where one, without making the other a party to a suit, has obtained a decree establishing and enforcing his equity, then the court unquestionably has equal power in a case arising under this statute.

It is a rule of uniform application of courts of justice that a party can not be deprived of his rights without a hearing, or at least an opportunity to be heard, in defense of his rights. This lies at the very foundation of all just jurisprudence, and is the reason why courts of equity always require all persons interested in the subject matter of the litigation to be made parties and to· be before the court before their rights are or can be affected. It is a rule of chancery practice and of equity law that a person who is not a party to a suit is wholly unaffected by its decree, unless he is a privy. The rights of a person not a party or privy to a judgment or decree remain as wholly unaffected as if it had not been rendered. It would be useless to cite authorities on so elementary a proposition, as the books abound in them and the rule is familiar to all persons in the profession.

There can be no question that if a person holding a junior or even an equal equitable lien were to obtain a decree enforcing his lien, without making the person holding the superior lien a party, he would hold subject to the superior lien as though he had not obtained his decree; or if he failed to make one holding an equal lien a party, they would hold precisely as they did before. A decree to which a person is not a party or privy has no binding force upon him, and a court of equity will recognize and enforce his rights as though the decree had not been rendered, unless a sale has been had under it and the rights of innocent *bona fide* purchasers have intervened, which in some cases would be protected. But even in that case the person obtaining the decree would be required by a court of equity to recognize the equities of the other equal lien holder; and the court has the same power, and it is made its duty under the statute, to adopt the same rule of decision in this class of cases that is acted upon by courts of chancery.

If, then, appellees held an equal or superior lien on this property with other lien holders, and they, in endeavoring to

enforce theirs, failed to make appellees parties to the proceeding, they were in nowise barred by the decree; and the court would be bound, on a proper application, to establish and enforce the liens of appellees.

The first section creates a lien on the lot or piece of ground which is improved, in favor of the laborer or material-man. When the contract to perform labor is made, the lien attaches. This is the clear and obvious meaning of this section. It will bear no other reasonable interpretation. It is a mistake to suppose that the court creates or confers the lien by its decree. The court only finds and declares that it was in existence. It has no more vigor as a lien after than before the decree. Its legality is thereby adjudged and determined, but it existed and attached to the property from the time the contract was made to make the improvement. When, therefore, appellees agreed to furnish, and did furnish, this machinery, and it was placed in the mill, their claim for its price became, from the time of making the contract, a lien on the lots, equal in degree with all labor and materials furnished for the erection and completion of the structure, unless appellees did some act by which it was waived or lost.

These liens are secret, attaching simply by furnishing labor or materials in constructing the building. The laborer or material-man is required to do no other act to secure his lien. They are not required to give notice, to record their claim or to do any other act to render their lien operative. After the lien has attached, all persons deal with the property at their peril. Under the law, it is the duty of those purchasing or taking liens on the property to ascertain, as best they may, whether it is incumbered with mechanics' liens, and they purchase it subject to such liens.

It is also insisted that appellees waived their lien when they sold the property, by reserving a lien upon it in the written contract; that they thereby received and held additional security that operated to destroy any lien that would otherwise have attached. It is true that where a laborer or

material-man receives security collateral to the property improved, whether the security be personal or a mortgage on or pledge of other property or chose in action, the law presumes that it was intended to waive or release the lien on the premises. In their effort to retain a lien on the machinery furnished by appellees, they took no collateral or independent security. It was but a futile effort to retain a superior lien on the property furnished over and above other lien holders. Had these parties taken a mortgage on these lots and the building, which the law would have adjudged void, would any one claim that they could not assert their lien? The lien attaches to and incumbers the property to improve which the material is furnished, and the efforts to acquire a more specific and exclusive lien thereon in nowise manifests an intention to release the property from all lien and to look to other security for payment, but it shows the very opposite intention—an intention to hold, if possible, the property furnished liable for the payment of their claim.

It is next urged that by receiving an assignment of the policies of insurance on the mill, the appellees thereby released their material-man's lien on the property. In the case of *Wilson* v. *Lyon,* 51 Ill. 166, it was held that where the vendor of real estate received from the purchaser an assignment of a policy of insurance on the life of the vendee, it did not waive the vendor's lien on the premises; and it was there held that the party alleging a waiver of such a lien must establish it. The same principles apply with equal or more force in this than in that case. Here there was in fact no security. The policy could not become a security unless the property was destroyed by fire, and that is a contingency which may not happen during the life of the policy. We do not see that there is any evidence which shows that appellees received this assignment with the intention of releasing their lien on the property. It was only to secure themselves in the event their lien should become unavailing by the destruction

of the property by fire. We fail to see that it was intended to or did operate as a release or waiver of their lien.

It then follows that as appellees still held a valid lien on the property as material-men when the former decree was rendered, and were not parties to that suit, their rights were in nowise affected by the decree or the sale; and, as we have seen, the court, under the statute, had power to afford them relief, notwithstanding the decree and the sale. And in administering such relief, the court had ample power, so long as the title to the property remained in the parties to the former suit, to vacate the sale and to order the property to be re-sold, especially where it is shown to have sold for only about one-ninth part of its value. To require appellees to receive from appellants a proportional share of the sum for which they bid it off, and permit them, for $3000, to retain property worth $23,000, and to the exclusion of appellees' claim, equally as meritorious as their own, would be grossly inequitable.

Had the property been sold to a person not a party to the record, other questions might have been presented, but here the purchase money was not and could not be paid, as it was purchased for the creditors themselves. They had only obtained a decree establishing their liens, an order for the sale of the property, which had been sold subject to redemption, and they had become the purchasers; but by all this they had acquired no right that barred or concluded appellees from asserting their rights.

When the decree and sale were set aside, appellees were then at perfect liberty to contest the amount or validity of any or all of the liens being asserted against the property precisely as they could have done had they been parties to the first proceeding. If the allowance of too large a lien in favor of any one of the claimants, in the opinion of appellees, endangered any portion of their own claim, they, for their own protection, had the unquestioned right to resist and have it reduced to its just and fair amount. We, therefore, see no

error in the action of the court in reducing the claims of appellants. The finding of the court in the first decree was not conclusive on appellees.

It is insisted that the court erred in preferring the lien of the mortgages in that portion of the improvements which were paid for by Wells, whilst erecting and completing the building, to the material-men. It appears from the finding of the court that the property was worth, before the improvements were made, the sum of $3500; that appellees and appellants contributed about $14,000 in materials to the building and machinery, and Wells, the owner, paid about $9000 for the improvements placed on the property.

The correct mode of ascertaining the rights of the parties is fixed by the 12th section of the lien law. It declares that incumbrances on the property prior or subsequent to making the contract for erecting the building shall not operate upon the building or materials until the liens in favor of the workmen and the material-men shall be satisfied; and upon questions between previous incumbrancers and creditors, the previous incumbrance shall be preferred to the value of the land at the time of making the contract; and it directs the court to ascertain what proportion shall be paid to the several parties in interest.

In the case of *North Presbyterian Church of Chicago* v. *Jevne,* 32 Ill. 214, it was held that a prior mortgagee had the first lien on the land as it was unimproved, and the mechanic or material-man had a first lien on the building; and that each should be satisfied out of the fund upon which he had the prior lien; that if either fund was more than sufficient to satisfy the prior lien thereon, and the other was insufficient to pay the prior lien on it, then the latter should be satisfied from the surplus remaining of the other fund. The same rule was adhered to in the cases of *Croskey* v. *Northwestern Man. Co.* 48 Ill. 481, and *Howett* v. *Selby,* 54 Ill. 151; but where, as in this case, there is a large proportion of the enhanced value of the property produced by the owner paying for labor and

material furnished by others than the parties to the suit, the question arises whether the mechanics and material-men shall have it appropriated to the payment of their liens, or shall it be applied to the prior incumbrances, or shall it be treated as a fund in which both may participate *pro rata*. In such a case, the enhanced value produced by the payment of money by the owner, whilst the work was progressing, should be applied to the satisfaction of the mortgages on the property; and if any portion of the fund thus created shall remain, to be applied to the satisfaction of the liens for labor and materials. It has always been recognized the true rule to hold all improvements placed by the mortgagor on the premises as being embraced in and subject to the mortgage. We can not suppose that they were intended, when made, to be for the benefit of other lien holders. They have their lien on the enhanced value they have given to the property, but have advanced neither money nor materials for which the owner has paid; and the subsequent mortgages may have been given to secure the very money paid by the owner for the labor and materials. This is the view taken by the court below in its decree.

A careful examination of the record in this case fails to disclose any error, and the decree must be affirmed.

*Decree affirmed.*