OTTO E. WEBER

*v.*

MILTON B. BUSHNELL *et al.*

*Opinion filed February 14, 1898.*

1. MECHANICS' LIENS—*effect of assignment of building contract as collateral security.* The assignment of a building contract by the contractor, with the owner's consent, to a sub-contractor as security for the latter's undertaking to complete the building to a point where the owner could draw on a promised loan, does not affect the original contractor's right to a lien, and upon the re-assignment of the contract he may enforce such lien in his own name.

2. SAME—*court may render any decree which will protect the rights of the parties.* In mechanic's lien proceedings the court, being endowed by statute with all the powers of a court of chancery, may render any decree possible to a court of equity which will secure and enforce the rights of the parties.

3. SAME—*law in force at date of contract governs as to time for giving notices.* The law in force at the date of a building contract governs as to the time for filing notice of claim for lien, for serving notices and for bringing suit, although repealed before the lien is perfected, but the remedy may be controlled by the later law.

4. SAME—*when time of performance of contract is waived.* The time of performance of a building contract, and the date of final payment depending thereon, as affecting the time allowed by statute for filing a claim for a mechanic's lien, are waived by the owner's acceptance of the building, without objection, at a later date, particularly where the delay in the work is caused by the owner's failure to make payments as agreed.

5. SAME—*when new contract does not extinguish right to lien under old contract.* A contract between the owner and a sub-contractor to complete a building does not extinguish the original contractors' right to a lien for labor and materials already furnished, where the new contract is merely supplemental to the original, its object being to complete the building to a point where the owner could draw on a promised loan in order to pay the original contractors, who, owing to the owner's default, had received nothing for their work, and were consequently unable to complete the contract.

*Weber* v. *Bushnell,* 69 Ill. App. 26, reversed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

This is a writ of error to reverse a judgment of the Appellate Court affirming a decree of the Superior Court of Cook county in a proceeding brought by defendants in error, Milton B. and Carl C. Bushnell, against plaintiff in error, Otto E. Weber, to enforce a mechanic's lien.

It appears from the evidence found in the record that plaintiff in error had leased for a term of ninety-nine years certain premises in Chicago, and on October 4, 1894, he entered into a contract in writing with defendants in error, whereby the latter undertook to erect for plaintiff in error an apartment house upon the premises for an agreed price of $40,000. Defendants in error, as they claim, completed the building, and brought this petition to enforce a mechanic's lien on the premises for a balance claimed to be due on the contract.

The court in its decree found that although the nominal price to be paid was $40,000, the actual price was only $28,750. It further found that defendants in error made a sub-contract with Von Platen & Dick, whereby the latter were to furnish material and labor upon the building, and that there was due to them the sum of $8269.35 therefor, which constituted a part of a total of $8433.04 found to be due the defendants in error.

Von Platen & Dick came into the transaction about March 5, 1895, upon which date they entered into a written agreement with plaintiff in error, wherein it was recited, among other things, as follows: "Von Platen & Dick have agreed to complete the unfinished work as far as the funds hereinafter named will permit, and to carry out from this date the contract heretofore made by and between said Otto E. Weber and the firm of M. B. & C. C. Bushnell, and also with the firm of Dinwiddie & Newberry, architects, as far as said funds will permit." And it was agreed as follows, in part: "Said Otto E. Weber hereby assigns, transfers and conveys said property heretofore described, to said Von Platen & Dick, as trustees, for the purpose hereinafter named. First, said Von Platen

& Dick are to furnish funds to complete the work on said building to the point where, according to the terms of said lease, said Otto E. Weber is entitled to draw on the loan of twenty-five thousand dollars ($25,000) made thereon by Lyon, Gary & Co., whereupon said Von Platen & Dick are to draw the money on the loan made by Lyon, Gary & Co. to the said Weber, and to pay out the same as follows, to-wit: To Dinwiddie & Newberry seven hundred and fifty dollars ($750); to M. B. & C. C. Bushnell the balance of said loan." And on the same date there was indorsed upon the back of the contract entered into between the parties the following:

"For value received we hereby assign and transfer this contract to Von Platen & Dick, March 5, 1895.

BUSHNELL & BUSHNELL,<br>M. B. BUSHNELL,<br>C. C. BUSHNELL.

"I consent to the above assignment, March 5, 1895.

· OTTO E. WEBER."

Subsequently, the following was also indorsed upon said contract:

"This contract having been assigned to us by M. B. Bushnell and C. C. Bushnell on the 5th day of March, 1895, as collateral security, we hereby surrender said collateral and re-assign and re-transfer said within contract to said M. B. Bushnell and C. C. Bushnell, Nov. 4, 1895.        VON PLATEN & DICK."

Counsel for plaintiff in error, in their brief, rely on the following to reverse the judgment:

"*First*—The assignment of the original building contract by complainants to Von Platen & Dick defeated any right or claim for a lien on the part of complainants.

"*Second*—All right or claim for a lien, either on the part of complainants or of Von Platen & Dick, was superseded and rendered null and void by the subsequent contract between defendant, Weber, and Von Platen & Dick, made and acted upon with the knowledge and consent of complainants, and for their benefit.

"*Third*—Complainants' lien, if they ever had any, was lost, because they did not, within four months after the last payment became due and payable according to the terms of the original contract, either bring suit to enforce their lien or file their claim for a lien with the circuit clerk, as required by the statute.

"*Fourth*—Complainants' lien, if they ever had any, was defeated because of an overcharge on their part of $11,-750, such overcharge having been made by them with intent to defraud defendant, Weber.

"*Fifth*—The notice of sub-contractor's lien by Von-Platen &.Dick was not given within the time required by statute."

The questions raised will be considered in the order in which made.

M. B. & F. S. LOOMIS, for plaintiff in error.

LINDEN & DEMPSEY, and J. A. COLEMAN, for defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

It appears from the record that Otto E. Weber was the owner of a leasehold on the south-west corner of Warren and Hoyne avenues, in the city of Chicago, and entered into a contract October 4, 1894, with the complainants, Bushnell & Bushnell, for the erection of an apartment house according to drawings and specifications made by Dinwiddie & Newberry, architects, for the agreed price named in the contract of $40,000, to be paid upon written certificates to be issued by said architects as the work progressed, not exceeding eighty-five per cent.   March 5, 1895, the contractors, Bushnell & Bushnell, had completed the foundation of the building and the walls to about the second story, and were putting on the third-story joists. The building had been in progress of erection from November, 1894, and though asked by Bushnell & Bushnell

to make payments of money from time to time, Weber had up to March 5, 1895, failed to pay anything, and Bushnell & Bushnell, being unable to procure money from their bank, again demanded money of Weber. Weber promised to pay $5000, but failing to furnish it, work on the building could go no further unless some arrangement for money could be made. Von Platen & Dick were sub-contractors on the building for mill work, lumber, glass and structural iron. On March 5, 1895, a conference was had between Bushnell & Bushnell, Weber and Von Platen, at the office of Coleman, an attorney. Weber and the Bushnells estimated it would take from $2000 to $3000 to finish the building to a point where a loan negotiated by Weber with Lyon, Gary & Co. for $25,000 could be drawn upon. Weber, who, under the contract, should have furnished the money, could not furnish any, and Von Platen, to save the money which his firm had put into the building as sub-contractors, consented to the advancement of sufficient money to bring the building to the point where the proceeds of the said loan would be available. The Bushnells notified Weber at this time that they had made arrangements with Von Platen to go ahead with the building, and that they were going to assign the contract *as security for money advanced to complete their contract.* Weber, it is said, consented to this, and asked Bushnell if he purposed to superintend the building himself, to which Bushnell replied, "Certainly I did; that I did not expect the contract would go out of my hands, and gave it only as security for payment." After this understanding was had, the assignment was written out by Coleman. Bushnell also testified that he superintended the construction of the building after this assignment. Von Platen testifies that "Bushnell said to me, in Weber's presence, that he would assign this contract to me as *collateral security for advances made and that might be made,* and that Mr. Weber said that was acceptable to him." C. C. Bushnell testified the assignment was only a security, as did also M. B.

Bushnell. Weber, the only person swearing that it was intended as an absolute assignment, is contradicted by these three witnesses. The contract was afterwards re-assigned to Bushnell & Bushnell, and in the re-assignment it is expressly declared that the original assignment was made by the Bushnells to Von Platen & Dick as collateral security.

After the assignment from the Bushnells to Von Platen & Dick was executed, a contract was entered into between Weber and Von Platen & Dick in regard to the building, but a careful inspection of this contract satisfies us that it was only intended to protect and secure Von Platen & Dick for money to be furnished by them to enable Weber and Bushnell to finish the building to the point when the loan money would be paid, and was not for materials and labor they might furnish. It did not affect the right of Von Platen & Dick to their lien, and there is nothing to indicate an intention to waive it. Neither did it affect the lien of complainants, Bushnell & Bushnell, as contended by Weber. The facts that Bushnell & Bushnell continued to superintend the building after the assignment of the original contract to Von Platen & Dick, and continued to do so until the completion of the building; that the money received from the loan was paid to them, except about $750; that Weber ordered extra work thereafter to be done by Bushnell & Bushnell, and that the architect's certificates were all issued to Bushnell & Bushnell, convince us that Bushnell & Bushnell were still regarded as the real contractors, and the assignment was only made as collateral security to Von Platen & Dick.

The statute vesting the court, in cases of mechanics' liens, with all powers of courts of chancery, it may render any decree that a court of chancery might, to secure and enforce the rights of parties. The record showing that Von Platen & Dick were equitably entitled to a portion of the money due the defendants in error, the court properly so decreed. By this, plaintiff in error was not

prejudiced. (*Clark* v. *Moore*, 64 Ill. 273; *Major* v. *Collins*, 11 Ill. App. 658.) The contract being assigned merely as collateral security, the action was properly brought in the name of Bushnell & Bushnell, and their right to enforce their lien was not affected by said assignment.

But it is said the claim for lien was rendered null and void by the contract of March 5, 1895. We do not concur in that view. That contract contains the following:

"Whereas, said Von Platen & Dick have agreed to complete the unfinished work as far as the funds hereinafter named will permit, and to carry out from this date the contract heretofore made by and between said Otto E. Weber and the firm of M. B. & C. C. Bushnell, and also with the firm of Dinwiddie & Newberry, architects, as far as said funds will permit: Now, for and in consideration of the premises, this contract and agreement is this day made and entered into on the following terms and conditions, to-wit: Said Otto E. Weber hereby assigns, transfers and conveys said property heretofore described to said Von Platen & Dick, as trustees, for the purpose hereinafter named. First, said Von Platen & Dick are to furnish funds to complete the work on said building to the point where, according to the terms of said lease, said Otto E. Weber is entitled to draw on the loan of twenty-five thousand dollars ($25,000) made thereon by Lyon, Gary & Co., whereupon said Von Platen & Dick are to draw the money on the loan made by Lyon, Gary & Co. to the said Weber, and to pay out the same as follows, to-wit: To Dinwiddie & Newberry, seven hundred and fifty dollars ($750); to M. B. & C. C. Bushnell the balance of said loan."

Other provisions of the contract provide that the rents of the building shall be paid to certain parties, and that plaintiff in error shall give a trust deed to secure certain advances made by Von Platen & Dick. There is nothing here that manifests an intention to abandon the lien conferred by law, or to give other security for labor or

171—38

materials furnished for the building, but the gist of the arrangement was, as declared in the agreement, to carry out the original contract made between Weber and the Bushnells so far as the funds would permit, and in addition, as there was a loan on the property of $25,000, which could be drawn when the work on the building was completed to a certain point, this arrangement provided that Von Platen & Dick should advance the money to complete the building to that point where the money could be drawn and used for labor and materials used on the building. The deed of trust mentioned in the agreement was never given, nor was any security given for labor or materials furnished for the building. The Bushnells never executed this contract, but if they were bound by it the contract can only be regarded as supplemental to the original agreement under which the building was to be erected by the Bushnells, and it in no manner impaired the lien which was conferred by the statute for the labor and materials furnished on the building.

It is said that complainants did not file their claim with the circuit clerk within four months after the last payment became due, as required by the statute. The law in force at the date of the contract, October 4, 1894, although it was repealed before the lien was perfected, governs as to the notice to be given, the limitation of time for service, and for bringing suit. The *remedy* may be controlled by the law of 1895. The repealing section (section 40) of the act of 1895 expressly provides "that this section shall not be so construed as to affect any rights existing or actions pending at the time this act shall take effect." In *Turney* v. *Saunders,* 4 Scam. 527, this court held that a mechanic's lien, growing out of a contract entered into before the passage of the act of 1839, but not completed until after it took effect, should not be prosecuted under that act; that the right which a plaintiff had acquired to bring a suit by the completion of his contract, under the law giving mechanics a lien, and the

liability incurred by the defendant to be sued, are the rights acquired and liabilities incurred under the act of 1833, which are not affected by the repeal thereof.

The act in relation to liens, approved March 25, 1874, was in force when this contract was made. Section 4 of that act (Hurd's Stat. p. 884,) is as follows: "Every creditor or contractor who wishes to avail himself of the provisions of this act shall file with the clerk of the circuit court of the county in which the building, erection or other improvement to be charged with the lien is situated, a just and true statement or account or demand due him, after allowing all credits, setting forth the time when such material was furnished or labor performed, and containing a correct description of the property to be charged with the lien, and verified by an affidavit. Any person having filed a claim for a lien, as provided in this section, may bring suit at once to enforce the same, by bill or petition, in any court of competent jurisdiction in the county where the claim for a lien has been filed." Section 28 provides: "No creditor shall be allowed to enforce a lien created under the provisions of this act, as against or to the prejudice of any other creditor or incumbrancer or purchaser, unless a claim for a lien shall have been filed with the clerk of the circuit court, as provided in section 4 of this act, within four months after the last payment shall have become due and payable. Suit shall be commenced within two years after filing such claim with the clerk of the circuit court, or the lien shall be vacated."

By section 28 no creditor shall be allowed to enforce a lien against any other creditor or incumbrancer or purchaser unless a claim for a lien shall have been filed with the clerk of the circuit court within four months after the last payment shall have become due and payable. The contract between Bushnell & Bushnell, the contractors, and Otto E. Weber, for the erection of the apartment house, was entered into on the 4th day of October, 1894,

and was to be erected according to drawings and specifications prepared by Dinwiddie & Newberry, architects, the contractors to begin the performance of the contract as soon as directed by the architects, and to hasten the same to completion, and to deliver the same to the owner on or before the first day of April, 1895; that in case of their failure to complete the work on the day specified above, they would pay to the owner, "as liquidated damages, the sum of $25 for each day thereafter until said work shall be completed, (Sundays excepted,) said damages to be retained out of any money due the contractors under this contract: *Provided,* that in case the contractors shall be positively *hindered by any default of the owner,* or of the architects, or of any other contractor on the work, or by strikes, fire, lightning, earthquakes or cyclones, the contractors shall be given a just amount of extra time to finish this contract; that in consideration of the covenants and agreements herein contained, to be kept and performed by the contractors, the owner agrees to pay, or cause to be paid, the sum of $40,000, upon written certificates issued by the architects as the work progressed, for a sum not to exceed eighty-five per cent of the value of the material used and labor performed, as estimated by the architects, to pay the said certificates immediately on presentation, and to make the final settlement for the remainder and extras, if any, *forty days after the work shall have been completed* as covenanted and agreed, and the architects shall have certified thereto in writing. All disputes as to the true intent and meaning of the drawings and specifications shall be referred to the architects, and their decision shall be final and binding."

This contract expressly provided that if the contractors failed to complete their work on the first day of April, 1895, they would pay the owner $25 for each day thereafter until the work should be completed, and that in case the contractors should *be hindred by any default of the owner,* etc., they should be given a just amount of extra

time to finish the contract. The evidence shows that the delay was caused by Weber's failure to pay the contractors money as agreed by the contract, and that the work was not completed and the architects did not issue their final certificate until September 17, 1895, which certificate *was turned over and accepted by plaintiff in error*, without any objection, on the said 17th day of September. The contract expressly provided that the *final payment should become due forty days after the work was completed.* The evidence, as well as the certificate of the architects, shows the building was completed September 17, 1895, and the final payment under the contract became due forty days after September 17, 1895. The statement of claim for lien was filed by the complainants, Bushnell & Bushnell, with the clerk of the circuit court of Cook county November 12, 1895, which was within the four months after final payment became due as required by the statute. In the case of *Nibbe* v. *Brauhn*, 24 Ill. 268, this court said (p. 270): "Appellant having permitted the contractors to proceed on the work after the first day of June, and accepting the work at a future day, has waived the performance on the day fixed, and that a mere extension of time of performance does away with none of the stipulations. An agreement to extend the time waives nothing more than the time of performance."

Plaintiff in error claims that the notice of the sub-contractors, Von Platen & Dick, was not given in time. By the terms of the contract with Von Platen & Dick the last payment was to be made within ninety days from the time the last item was furnished. The last item of materials delivered, as the evidence shows, was August 23, 1895. The statute in force at that time (Rev. Stat. chap. 82, sec. 31,) provides: "If there is a contract in writing between the original contractor and the sub-contractor, a copy of such sub-contract, if the same can be obtained, shall be served with such notice and attached thereto, which notice shall be served within forty days    *    *    *

after payment should have been made to the person performing such labor or furnishing such material." The rights of VonPlaten & Dick to a sub-contractor's lien are controlled by this statute, and section 31 fixes the requirements of the notice to be given. Under the contract the final notice was to be made within three months after the last final delivery, which was August 23, 1895. The three months expired the 21st day of November, 1895, and therefore the notice was served within the forty days required by the statute, and was in time.

Plaintiff in error insists that defendants' lien is defeated because of an overcharge, with intent to defraud plaintiff in error, Weber, and defendants in error have assigned as a cross-error that the court erred in finding that the price to be paid for the building was only $28,750. The positions of the respective parties on this question will be considered together.

The consideration expressed in the written agreement between Bushnell & Bushnell and Otto E. Weber for building the apartment building was $40,000. Plaintiff in error claims that the $40,000 named in the contract was only a nominal consideration, and that the real and actual consideration to be paid was $28,250. Charles D. Sweetlund testified for plaintiff in error that he was a promoter of deals; that as a representative of Weber he went to Bushnell & Bushnell to get their bid on this building; that he told them they could get the building at a certain figure, and named $27,500; that he told them there was $25,000 in the bank to pay towards the building; that he took Weber's word for it; that he told Weber this 24-flat building, 47 x 125 feet, four stories high, could be built for $22,500; that Weber said it was going to cost in the neighborhood of $40,000; that Weber said, "If you can get it built for less, you can get it done;" that the contract was drawn for $40,000; that Weber said, "I want this contract drawn for $40,000 because I am making a loan of $25,000, and of course I don't want it to appear I am loaning

all the building costs;" that Bushnell said, "We can fix that. We will receipt to you for the difference. Make the contract $40,000 and receipt back the difference between that and $27,500." The witness said he had got nothing for promoting this scheme, but had let some of the other contracts, and got three per cent. Otto E. Weber, the plaintiff in error, testified that the reason for naming the contract price as $40,000 was, his lease called for a building to cost that amount, and "I said, how will we arrange that? Supposing I would have to produce my contract to the loan company? 'Well,' he said, 'we'll draw a receipt for $11,750.'" In his cross-examination Weber says the consideration was the difference of the cost of the building between $40,000 and $28,250,—that there was a dispute as to the price, and he compromised with them for $28,250.

These two witnesses disagree. One says the contract price was $27,500, the other, $28,250,—the difference between the amount of the receipt of $11,750 and $40,000. Weber's explanation of why $40,000 was put in the contract shows that his intention was to deceive and defraud the loan company. His lease called for a building to cost $40,000, upon which he was to receive a loan for $25,000. He consented to a building to cost $28,250 instead of $40,000. It is a confession by Weber himself of an intent on his part to deceive and defraud, and tends to impeach his character for honesty. If we believe his testimony is true, he deceived the parties making the loan. If he would deceive and defraud the party making the loan to assist him in erecting his building, would he hesitate to defraud the contractors if an opportunity offered? Two other witnesses were called, who say they heard Bushnell say they were to get $27,500, but neither corroborates Weber that the price was to be $28,250.

Defendants in error dispute this testimony, and contend that the consideration named in the written contract was the actual and true consideration agreed upon. C. C.

Bushnell, one of the complainants, testified that their first proposition was $40,000, and then an agreement was reached at $40,000 when Weber had the contracts prepared, and denies that he told Sweetlund that he and his father would take the contract and complete it for $27,500, or that he told either of the witnesses that the contract was $27,500. He explains how the $11,750 receipt came to be on the back of the contract; that they asked Weber for money in December, 1894; that they had been unable to get any of the bank because the bank had a bad report on him (Weber); that the bank had looked him up and did not care to loan any money on a building that he was interested in; that Weber came a day or two afterwards, when his father and he were in the office, and pulled out of his pocket $1000 or $2000, and made a proposition to them to take $5000; that he would give seventeen lots he had in Denver that he thought were worth $400 a lot; that Bushnell asked him to leave the $2000, but he would not give up the money until they had executed a receipt for $11,750,—that is, until they had accepted the lots. Bushnell swears they did not get the $11,500 nor the lots. M. B. Bushnell corroborates this, and says they consented to write the receipts on the two contracts; that Weber said they could leave the dates blank; that he then signed the receipts. He also swears they did not get the $11,500, and that the contract price was $40,000. Von Platen swears that Weber, in a conversation, asked him if he thought he could get Bushnell & Bushnell to consent to take all of the $11,500 in lots in Denver. He also told him that there was a special arrangement between him and Bushnell in regard to the payment of the $11,500, but did not state what it was. Newberry, who drew the contract, positively denies that Weber told him the contract was less than $40,000.

The record shows that prior to the issuance of the final certificate Dinwiddie & Newberry, the architects, had issued certificates aggregating $39,000, and that on

September 17, 1895, they issued their final certificate for $2151.56, making a total, including extra work, of $41,-168.25, as follows:

"$2151.56.                    CHICAGO, *Sept. 17, 1895.*

"*To Otto E. Weber:*—This is to certify that M. B. & C. C. Bushnell, contractors for the entire work of apartment building at Warren and Hoyne avenues, Chicago, are entitled to a final payment of $2151.56, contract price.

| | | |
|---|---|---|
| Contract price, | | |
| By the terms of contract, - - - - - - - | $40,000.00 | |
| Extra work, - - - - - - - - - - - - | 1,482.25 | |
| | | $41,482.25 |
| Deduction - - - - - - - - - - - | | 314.00 |
| Total - - - - - - - - - - - | | $41,168.25 |
| Previous issues, - - - - - - - | $39,016.69 | |
| Present issue - - - - - - - | 2,151.56 | |
| | | $41,168.25 |

DINWIDDIE & NEWBERRY, Architects."

The $25,000 loan had been paid in July,—nearly two months before this final certificate,—and, with previous issues of over $39,000 in certificates, Weber on September 17, 1895, directed Newberry, the architect, to go ahead and issue the final certificate, waiving his claim of $25 per day against the Bushnells for delay. This act on the part of Weber allowing and directing his architects to issue certificates for the full amount of the $40,000 and for the extra work is inconsistent with the claim that the actual contract price was $28,250. Another circumstance tending to prove that the price expressed in the contract was the price agreed upon, and that there was no overcharge with intent to defraud, is, that the actual cost of the building was about $34,000, leaving the difference between the actual cost and the amount expressed in the contract for the contractors' profits.

After a careful examination of the record we are satisfied there was no overcharge, and that the preponderance and weight of the evidence are in favor of the defendants in error, and that the court erred in finding and decreeing that the actual consideration of the said contract was $28,250, and in not finding and decreeing

that the consideration of $40,000 expressed in the contract was the actual and true consideration, and in failing to find that there was due complainants, M. B. & C. C. Bushnell, from the defendant, Otto E. Weber, the sum of $20,123.04, of which sum Von Platen & Dick are entitled to $8269.35 as sub-contractors and equitable assignees of the avails of the lien.

The judgment of the Appellate Court and the decree of the Superior Court of Cook county will be reversed and the cause remanded, with directions to the Superior Court to enter a decree in conformity with the views herein expressed.                *Reversed and remanded.*