WARREN SPRINGER

v.

CHARLES KROESCHELL et al.

*Filed at Ottawa May 12, 1896.*

1. PRACTICE—*in chancery—suits for mechanics' liens may be consolidated.* Suits having different parties and involving different rights, brought to enforce several mechanics' liens on the same property, may be consolidated, although the general chancery practice does not favor consolidation.

2. EVIDENCE—*resulting trust may be established by parol.* A resulting trust may be established by parol, and for this purpose declarations of one holding the legal title that another person's money paid for the land are competent.

3. MECHANICS' LIENS—*when equitable owner is estopped to deny trustee's right.* Equitable owners of land, who permit the holder of the legal title to make contracts and actively superintend the construction of a building on the land, are estopped to deny that such trustee is the "owner," within the meaning of the Mechanic's Lien law, as against parties furnishing labor and materials who are ignorant of the trust.

4. SAME—*an equitable owner may contract for improvements.* One holding the equitable title to real estate is an "owner," within the meaning of the act on mechanics' liens, and a lien may be enforced for labor and materials furnished in pursuance of his contract.

5. SAME—*when trustee is estopped to deny beneficiary's ownership.* A holder of the legal title to property who actively superintends the construction of a building thereon cannot deny ownership, within the meaning of the statute, of the beneficiaries who, with his knowledge, make contracts for work and material.

6. SAME—*sufficiency of statement filed with clerk.* Where labor is done and materials are furnished under an entire contract, a statement filed with the clerk that "said labor was performed and said materials furnished between September 18, 1890, and October 31, 1890," is a sufficient compliance with the statute. (Laws of 1887, p. 219.)

7. SAME—*sufficiency of description of property in claim for lien.* A statement filed with the clerk which claims for labor and materials used in "a brick building" upon "lots 10 and 11," sufficiently complies with the provision of the statute requiring "a correct description of the property," (Laws of 1887, p. 219, sec. 4,) even as against a purchaser, although the building mentioned covered a small part of another lot in the same block.

*Springer* v. *Kroeschell,* 59 Ill. App. 434, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

WILLIAM J. AMMEN, and W. N. GEMMILL, (ALLAN C. STORY, of counsel,) for appellant.

LACKNER & BUTZ, and WILLIAM D. FULLERTON, for appellees Kroeschell Bros.; WEIGLEY & EASTMAN, for appellee the Charles Munson Belting Co.; SMITH, SHEDD & UNDERWOOD, for appellee J. L. Fulton; PEASE & MC-EWEN, for appellees the Harvey Lumber Co. and Field Lumber Co.; DOW, WALKER & WALKER, and JOSIAH BURNHAM, for appellee the Clapp Automatic Fire Extinguisher Co.; GEORGE W. PLUMMER, and WHARTON PLUMMER, for appellees Perkins Bros. and Patrick Nacey; CHARLES LANE, for appellee George B. Carpenter.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This is a case, where a number of suits, begun by the filing of petitions for mechanics' liens, were consolidated, and referred to a master to take proofs and report his conclusions. The consolidated causes coming on for hearing upon the pleadings and master's report and exceptions thereto, the report was confirmed, and a decree was entered allowing the claims of the complainants or petitioners who are the appellees herein, and declaring liens, under the Mechanic's Lien law, for the amounts of such claims against the premises hereinafter described, and ordering a sale in default of payment. The decree thus entered by the circuit court in favor of the lienors has been affirmed by the Appellate Court, and the present appeal is prosecuted from such judgment of affirmance.

The claims were for labor performed and materials furnished in a building known as Excelsior Block, situated at the north-west corner of Canal and Jackson streets

in Chicago on lots 10 and 11 and the south 7$\frac{7}{12}$ feet of lot 7 in block 51 in school section addition to Chicago, being otherwise known as 175 South Canal street.

*First*—It is said, that the court erred in entering an order for the consolidation of the causes. We think, that the consolidation of the causes was justified by the decision of this court in *Thielman* v. *Carr*, 75 Ill. 385, where it was held, that, "while the general chancery practice is opposed to the consolidation of cases having different parties and involving different rights, yet such a practice is proper when the litigation grows out of the enforcement of mechanics' liens under the statute, and may be necessary, in some cases, to enable the court to settle and adjust the rights of the various lienholders, or those claiming liens." We see no reason for changing the views there expressed upon this subject.

*Second*—It is urged, that the claims of the several appellees, and the decree of the court allowing such claims and awarding liens for the amounts thereof, are based upon different and inconsistent theories as to the ownership of the premises; and that this inconsistency appears not only in the pleadings but also in the evidence introduced. The appellees, together with the character and amounts of their claims as allowed by the decree, are as follows: Kroeschell Brothers, contractors for the steam-heating apparatus in the building, $2450.00; Perkins Brothers, contractors for the painting and glazing, $1681.26; Patrick Nacey, contractor for the plumbing and gas-fitting, $3295.67; George B. Carpenter, contractor for the furnishing of certain ropes, $177.00; J. L. Fulton, paving the court and driveway and third floor of the building with asphalt, $1174.45; Clapp Automatic Fire Extinguisher Company, furnishing the building with the equipment of the Clapp system of automatic fire protection, consisting of 870 sprinkler heads, tank, alarm valves, hose, air pump, etc., $3568.93; Charles Munson Belting Company, contractors for the belting

for the manufacturing plant in said building, $745.27; Field Lumber Company, contractors for furnishing certain lumber for said building, $1960.55; T. W. Harvey Lumber Company, contractors for part of the lumber for said building, $1231.16.

The proof in regard to the title of the property shows the following facts: The premises in question were leased by the widow and heirs of Joel Ellis, deceased, and the executors and trustees of his estate, to Hibbert J. Lehman under a lease for ninety-nine years, dated May 21, 1889. Subsequently, the fee of the premises was conveyed by said executors and trustees and widow and heirs to said Hibbert J. Lehman by warranty deeds, dated March 19, 1890, and recorded March 24, 1890. By warranty deed, dated November 14, 1890, and recorded November 17, 1890, the premises were conveyed by Hibbert J. Lehman to the appellant, Warren Springer.

The evidence shows, and the decree finds, that Hibbert J. Lehman held the legal title in trust for "George Lehman & Sons Company." This company, sometimes known as a corporation called the "George Lehman & Sons Company," and sometimes as the firm of George Lehman & Sons, contractors and builders, consisted of George Lehman, and his sons, Hibbert J. Lehman, Edwin Lehman, and Milo B. Lehman. George Lehman was president of the company, and Hibbert J. Lehman was its secretary. There is some evidence tending to show, that Springer, the appellant, was a stockholder in the "George Lehman & Sons Company." All the contracts made by the appellees with Hibbert J. Lehman, or "George Lehman & Sons Company," or both of them, or with Hibbert J. Lehman as trustee, or with any of the Lehmans, for doing work or furnishing material for the building upon the premises in question, were made while Hibbert J. Lehman held the title, and before the conveyance of the property to the appellant on November 14, 1890. All the work had been done, and all the material had been fur-

nished by the appellees for the building, before the con-
veyance was made to appellant on November 14, 1890,
and certainly before that conveyance was recorded on
November 17, 1890.

Appellant complains, that the trial court permitted
oral testimony to be introduced for the purpose of show-
ing, that Hibbert J. Lehman held the title to the prop-
erty in trust for the company. The testimony consisted
of proof of admissions or declarations, made by George
Lehman and Hibbert J. Lehman in March, 1890, to a rep-
resentative of one of the appellee creditors to the effect,
that the premises had been purchased with money raised
by the Lehmans, or their company, and that the title had
been placed in said Hibbert for convenience. Under this
state of facts a resulting trust arose in Hibbert in favor
of those who furnished the money. Where one party
takes the title to a piece of land, but another, or others,
advance the purchase money, a resulting trust will exist
in favor of the latter, and the holder of the legal title
will be regarded as the trustee of the party furnishing
the money. It is well settled, that such resulting trusts
may be established by parol evidence. It is allowable
to prove by parol, that the party holding the legal title
admitted, that another person's money was paid for the
land. (*VanBuskirk* v. *VanBuskirk*, 148 Ill. 9). The result-
ing trust arises by operation of law out of the purchase
by one and the conveyance of the title purchased to an-
other. (Ibid). We do not think, that, under the circum-
stances, the admission of the oral evidence complained
of was erroneous.

As to some of the appellees, their pleadings aver, and
their proofs show, that they made their contracts with
Hibbert J. Lehman as owner. The first section of the
Mechanic's Lien law, as it existed when these contracts
were made, gives the lien to any person, "who shall, by
contract, express or implied, or partly expressed and
partly implied, with the *owner* of any lot or piece of land,

furnish labor or material." (2 Starr & Cur. Stat. p. 1512).
It would appear from the evidence and from the finding
of the decree, that those of the appellees, who thus con-
tracted directly with the holder of the legal title as
owner, had no notice that the title was so held in trust
for other persons. In thus contracting with the holder
of the legal title without notice of the interests of the
*cestui que trust*, was the statutory requirement, that the
contract should be with the "owner," complied with?
It must be remembered, that the party here holding the
legal title was superintending the construction of the
building. Hibbert J. Lehman was not only permitted by
the real owners to hold the title, but to supervise the
erection of the building upon these premises, and to deal
with parties furnishing work and materials therefor.
Where the owner of property allows another to appear
as the owner thereof, and innocent persons are thus led
into dealing with such apparent owner, they will be pro-
tected. By such act the real owner is precluded from
disputing, as against them, the existence of the title
which he suffered to be vested in the party dealing with
them. (*Anderson* v. *Armstead*, 69 Ill. 452). As Hibbert J.
Lehman could not deny his ownership as against the
appellees dealing with him as owner, and as the other
Lehmans, or the company which they composed, are
estopped by their conduct from denying his ownership
as against such appellees, it follows that their contracts
must be regarded as having been made with the owner
within the meaning of the statute. Where the equitable
owner of land, who has paid an agreed price therefor,
permits a building to be erected thereon, and suffers the
legal title to remain in another until its completion, the
holder of the legal title is, for all practical purposes
pertaining to the construction of the building, the owner
within the meaning of the Mechanic's Lien law, and the
equitable estate will be equally bound with the legal title
to satisfy the liens of mechanics, or material-men, grow-

ing out of contracts made with him in the construction
of the building. (*Hinckley* v. *Field's Biscuit, etc. Co.* 91 Cal.
136). "Where a party holds the legal title, and makes
improvements, the land is bound for the liens of the
mechanics; and this party is the owner, though the
funds, with which the property was purchased, belonged
to other persons." (Phillips on Mechanics' Liens, sec. 66;
*Anderson* v. *Dillaye*, 47 N. Y. 678).

As to several of the appellees, the allegations and
proofs are, that they contracted with Hibbert J. Lehman
*and* the "George Lehman & Sons Company." Others
allege and prove, that they contracted with Hibbert J.
Lehman as the trustee of the "George Lehman & Sons
Company." One of them alleges and proves, that he
contracted with the "George Lehman & Sons Company,"
and one, that he contracted with Hibbert J. Lehman and
his father and two brothers. We regard these differ-
ences as immaterial. If the contract was made both with
the trustee and *cestui que trust*, it was of course made
with the owners of the property. If the contract was
made with the *cestui que trust* alone, it was made with the
owner of the equitable title. The word, "owner," in the
statute includes the owner in equity as well as at law.
It "covers one who has the equitable title." (Phillips on
Mechanics' Liens, secs. 67, 188; *Atkins* v. *Little*, 17 Minn.
342; *Mortgage Trust Co.* v. *Sutton*, 46 Kan. 166; *Drug Co.* v.
*Brown*, 46 id. 543; *Rollin* v. *Cross*, 45 N. Y. 766.) Ordinarily,
the lien will only take effect upon the equitable, and not
upon the legal, interest, where the contract is with the
owner of the equitable interest. But, here, the holder
of the legal title was a stockholder and officer in the
company for whose benefit he held the title, and was
authorized by the company to superintend the construc-
tion of the building and make contracts with workmen
and material-men with reference to its construction. He
would be estopped to set up any rights which he himself
might have as holder of the legal title as against those

with whom he dealt in the capacity of agent for the holders of the equitable title. And, so, the contracts for work and material for the building, made with him as trustee for the company, were sufficient to create a lien upon the property, because of his authority from the *cestui que trust* to erect the building and make contracts for its erection. (Phillips on Mechanics' Liens, sec. 80; *Taylor* v. *Gilsdorff*, 74 Ill. 354; *Board of Education* v. *Greenebaum*, 39 id. 609). If, under the views already expressed, a contract with Hibbert J. Lehman, the holder of the legal title as shown by the records, was a contract with the "owner," it would be none the less so, because, in one case, the father and brothers joined in the contract. If but one of several persons, who purchase material for a building, owns, or holds the title to, the land, the lien will be good. (*Van Court* v. *Bushnell*, 21 Ill. 624; *Roach* v. *Chapin*, 27 id. 194; *Croskey* v. *Corey*, 48 id. 442.)

We are of opinion that the objections to the decree upon the ground of alleged insufficiency in the pleadings and proofs as to ownership are not well taken.

*Third*—Other specific objections are made, some of which will be briefly noticed.

It is said, that the statement or account or demand, filed by one of the creditors with the clerk of the circuit court, as required by section 4 of the Mechanic's Lien law, as amended by the act of May 31, 1887, (3 Starr & Cur. Stat. p. 819), is not a statement or account or demand, "setting forth the time when such material was furnished or labor performed" within the meaning of that section. Upon turning to the statement in question, we find that it states, that "said labor was performed and materials furnished between September 18, 1890, and October 31, 1890." We think, that this statement was sufficient, as the labor was done and the materials were furnished under an entire contract. "Where the work was done or the materials furnished under an entire contract, the different times when the work was performed,

or the materials furnished, need not be stated." (Phillips on Mechanics' Liens, sec. 359). "Certainty to a common intent is all that is required in stating a mechanic's claim, and where the law requires the time when the work was to be done to be set forth, a claim which states, that the work * * * was done between April 16, 1841, and August 29, 1841, is sufficient." (Id. sec. 360). We do not think, that the contrary of this doctrine is announced in *Campbell* v. *Jacobson,* 145 Ill. 389, when the language of that decision is examined in connection with the statement there set forth.

It is further contended, that the statement or claim for lien, filed by one of the creditors with the clerk of the circuit court, does not correctly describe the property. The statement here referred to recites, that "the labor and materials mentioned were performed and used in the repairing and improvement of a brick building upon the following described premises in the county of Cook and State of Illinois, to-wit: Lots ten (10) and eleven (11) in block fifty-one (51) in school section addition to Chicago in the east half of the north-west quarter of section 11, town 39, north, range 14, east of the third principal meridian." It is conceded, that the correct description of the property is, "Lots ten (10) and eleven (11) and the south seven and two-twelfths ($7\frac{2}{12}$) feet of lot 7 in block fifty-one (51)," etc. The description in this particular statement of one of the creditors fails to mention seven and one-sixth feet of the land in question. The statements, filed by all the other creditors, contained the correct description.

We recognize the force of this objection, and a proper disposition of it is not free from difficulty. The appellant in this case is a purchaser from the owners who made the contracts with appellees for the construction of the building. The lien, given by the statute to a mechanic or material-man for work done or materials furnished in the erection or repair of a building, will .

attach from the date of the contract; and whoever pur-
chases the property after the contract is made purchases
subject to the lien under that contract, and is bound
by it.  (*Clark* v. *Moore*, 64 Ill. 273; *Franklin Savings Bank*
v. *Taylor*, 131 id. 376; *Paddock* v. *Stout*, 121 id. 571; Cole-
man on Mechanics' Liens, secs. 110, 164, 168).  But it is a
general rule, that, where the interests of such a pur-
chaser are to be affected, a stricter construction of the
Lien law will be adhered to than is followed in cases
arising between the mechanic or material-man and the
original owner.  (*Nibbe* v. *Brauhn*, 24 Ill. 268; Phillips on
Mechanics' Liens, sec. 20).  The question then arises,
whether the description of the premises contained in the
statement or claim for lien, as above quoted, is a suffi-
cient compliance, as against a purchaser from the own-
ers, with said section 4, which requires a statement
"containing a correct description of the property to be
charged with the lien."

Said section 4 provides, that "every creditor or con-
tractor, who wishes to avail himself of the provisions of
this act, shall file with the clerk of the circuit court of
the county in which the building, erection or other im-
provement to be charged with the lien is situated, a just
and true statement or account or demand due him after
allowing all credits, setting forth the time when such
material was furnished or labor performed, and contain-
ing a correct description of the property to be charged
with the lien, and verified by an affidavit," etc.

Section 28 in the amended act of 1887 provides, that
"no creditor shall be allowed to enforce a lien created
under the provisions of this act, as against or to the
prejudice of any other creditor or encumbrancer or pur-
chaser, unless a claim for a lien shall have been filed
with the clerk of the circuit court, as provided in section
4 of this act, within four months after the last payment
shall have become due and payable," etc.  (3 Starr &
Cur. Stat. pp. 819, 822).

We have said, that the object of requiring the statement to set forth "the times when such material was furnished or labor performed," is to enable those interested to know from the claim itself, that it is such as can be enforced. (*McDonald* v. *Rosengarten*, 134 Ill. 126).

In *Campbell* v. *Jacobson, supra,* we said that the requirement set forth in section 4 "must be at least substantially complied with, and, unless that is done, the (his) lien can not be enforced."

The description of the property in the statement, or claim of lien, is designed to be of value, as notice, both to the owner and to purchasers. (Phillips on Mechanics' Liens, sec. 378). "Only such descriptions as are calculated to mislead subsequent purchasers and creditors, or fail to locate the premises, invalidate the claim." (2 Jones on Liens, sec. 1421). Acts, giving mechanics' liens, are said, as a general thing, to contemplate that the claimants should prepare their own papers; and, hence, courts are reluctant to set aside such claims merely for loose description. A description is sufficient, if there is enough in it to enable a party familiar with the locality to identify the premises, intended to be described, with reasonable certainty. "It is not necessary that the description should be either full or precise;" and, so far as purchasers are concerned, its office is to give them notice. (Phillips on Mechanics' Liens, secs. 379, 381). "The property must be described with convenient or reasonable certainty." (Ibid). Some of the text books and decisions require greater certainty in the description, where the rights of third persons are to be affected by the lien, than in cases where the contest is wholly between the material-man and the land owner, whose property has been improved by the material furnished. It appears from the record in this case, that one of the considerations for the transfer of the property in question to appellant was, that he should take the building subject to all liens. But, whether he can be regarded as a third

person within the meaning of the distinction above. drawn, or not, sections 4 and 28, as quoted, when read together, plainly mean, that a statement is sufficient, even as against other creditors, encumbrancers or purchasers, if it contains "a correct description of the property to be charged with the lien." (*Campbell* v. *Jacobson*, *supra*).

What, then, is "a correct description?" Mr. Phillips, in his work on Mechanics' Liens, says: "The general rule," (that a description that identifies is sufficient), "is not altered, although the law may require a 'correct' description of the property to be given. The term, 'correct description,' means only such description which identifies the individual object intended to be designated." (Phillips on Mechanics' Liens, sec. 378).

Applying these definitions to the description now under consideration, we are inclined to hold, that the description is sufficient under all the facts of this case, although it is inaccurate. The statement sets forth, that the material of this particular creditor was furnished for the repairing and improvement of the brick building upon lots 10 and 11. As matter of fact, that building covered seven and two-twelfths feet more than lots 10 and 11. But lots 10, 11 and 7 were all in block 51. There were no other lots 10 and 11 in block 51 than those on which this building, which covered lots 10 and 11 and the south seven and one-sixth feet of lot 7, stood. Section 1 of the act of 1874, which was in force in February, 1891, when the first petition herein was filed, provides, that the party entitled to the lien shall have it upon the land *and* building. (2 Starr & Cur. p. 1512). Now, it is quite manifest, that a statement, which claimed a lien upon the building situated on lots 10 and 11 in block 51, was sufficient to notify owners and purchasers, that a lien was claimed upon the building which covered those two lots and the seven and one-sixth feet adjoining them. The description was not calculated to mislead subsequent

161—24

purchasers and creditors, and was sufficient to enable them to identify the premises, intended to be described, as the premises which were covered by the brick building referred to.

In *Willamette Steam Mills Co.* v. *Kremer,* 94 Cal. 205, the Supreme Court of California has held just such a defective description as that under consideration to be sufficient. In that case, under a statute which gave mechanics and material-men a lien for labor and materials furnished for the construction of a building, and required the filing of a claim containing "a description of the property to be charged with the lien sufficient for identification," a claim of lien was filed, which described the building as being on lot 6 in block 28, when, as matter of fact, it was upon lot 6 and a part of lot 7, and the court there said: "We are of the opinion, that the description of the property in the claim of lien filed  *  *  *  is a sufficient compliance with the statute.  *  *  *  Nor was the sufficiency of the description impaired by the statement that the building was on lot 6 in that block. The greater portion of it was in fact upon that lot, and the building intended was thus sufficiently identified, notwithstanding it extended a short distance beyond the line of division between the two lots.  *  *  *  In the absence of any ambiguity or uncertainty, the statement must be held sufficient, whenever it can be determined from it what building was intended; and, as a general rule, the sufficiency of the description is a question of fact to be determined by the trial court."

*Fourth*—Various other objections are discussed by counsel for appellant. Many of these objections, though specific enough as stated by counsel in their briefs, were not thus specific as made before the master, and in the exceptions to his report. Such objections and exceptions were so general in their character, as to give no indication of the particular points now sought to be included in them. This is not a correct practice. Objec-

tions to a master's report should be made before the mas-
ter before the report is returned into court, and should
point out the grounds of objection with reasonable cer-
tainty; the exceptions, filed to the report after it is re-
turned into court, should correspond with the objections
made before the master, and be confined to such objec-
tions as were allowed or overruled by the master; and
such exceptions are regarded as in the nature of special
demurrers, and the party objecting must point out the
error. (*Hurd* v. *Goodrich*, 59 Ill. 450; *Moffett* v. *Hanner*, 154
id. 649).

We have, however, considered the objections of coun-
sel other than those herein particularly discussed, and
find that they are exceedingly technical, and not well
taken.   They relate mostly to the sufficiency of the state-
ments required to be filed by section 4.   We think, that
the respective statements filed by the appellees with the
clerk of the circuit court, conform substantially to that
section, and were filed within the time thereby required.
Others of the objections relate to the statements, under
oath, delivered by the several appellees to the owner or
owners of the premises, giving the number, name of every
sub-contractor, mechanic or workman in their employ,
or persons furnishing material, with their names, rates
of wages, etc., as required by section 35 of the Mechanic's
Lien law as amended by act of June 16, 1887.   (3 Starr
& Cur. p. 825).   We think, that these statements were in
substantial compliance with section 35, and that there
are no defects in them, sufficient to justify a reversal.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*