## William H. and Eugene L. Merritt, Copartners as W. H. Merritt & Company, v. Crane Company et al.

### Gen. No. 12,342.

1. MECHANIC'S LIEN—*when contract provides for completion within three years and payment within one year.* A contract does not fail to fix the time for completion of the work provided for therein where it stipulates for completion within three years and provides for a test and the curing of defects, if any be found upon such a test; such a contract is construed to require the test and the curing of defects to be within the period fixed for completion.

2. MECHANIC'S LIEN—*when there is no variance between allegations and proof of ownership.* Where the bill alleges that the title was in the defendants as copartners, and the proof shows that it was in such defendants as tenants in common, there is no variance.

3. MECHANIC'S LIEN—*when subcontractor entitled to.* Where it appears that after the service of notice upon the owner by a subcontractor, the former paid money to the latter, he is responsible to such subcontractor upon his establishing his rights; the lien of the subcontractor attaches to all money due at the time of the service of the notice and all money subsequently becoming due from the owner to the contractor.

4. MECHANIC'S LIEN—*interest allowable to subcontractor.* Interest is allowable upon a subcontractor's lien without showing unreasonable or vexatious delay of payment.

5. MECHANIC'S LIEN—*time for completion need not be specified in subcontract.* The presumption is that the subcontractor is required to complete his work before the time fixed for the completion of the original contract, and if the time fixed for completion in the original contract is within the statute the subcontract will support a lien, notwithstanding it may not fix the time for completion.

6. MECHANIC'S LIEN—*burden to show indebtedness from owner to contractor.* Where a subcontractor seeks to enforce a lien against an owner, the burden of showing an indebtedness existing at the time of service of notice or accruing thereafter is upon the subcontractor.

7. AMENDMENT—*when proper, without objecting or excepting to master's report.* Where the master fails to make an allowance for extras in a mechanic's lien proceeding because of the lack of sufficient allegations, the petitioner is entitled to amend without having objected or excepted to the report of the master, and thereupon the court may allow for such extras, the master having found the essential facts upon which to predicate such allowance.

Mechanic's lien proceeding. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in

the Branch Appellate Court at the March term, 1905. Affirmed. Opinion filed April 24, 1906.

**Statement by the Court.** This appeal is by the owners from a final decree declaring mechanic's liens on their premises in favor of three subcontractors, the appellees.

The Crane Company filed the original bill to enforce its claims as a subcontractor for a mechanic's lien. P. T. Maloney and the Kellogg-Mackay-Cameron Company were also subcontractors and filed intervening petitions to enforce their claims for mechanics' liens.

In August, 1899, appellants Merritt & Co. made a written contract with the Western Engineering & Construction Company for the erection in South Chicago of a grain elevator for $120,000 and complete the same on or before December 1, 1899. By the terms of the contract Merritt & Co. agreed to advance to the construction company out of the $120,000 such sums of money as might be necessary to meet all pay rolls and freight bills at such times as they became due, and to advance to the construction company, at the end of each calendar month after the work had been commenced, an amount equal to eighty-five per cent. of all materials used and labor furnished, less the amount of money previously advanced; provided that the total amount that had already been advanced for all purposes should at no time before the final acceptance of the elevator exceed the sum of $102,000.

On November 11, 1899, the Crane Company entered into a contract with the Western Engineering & Construction Company, whereby it agreed to furnish to the construction company certain pipe, valves and fittings for $685.54 to be used in the construction of the elevator, the same to be delivered before January 1, 1900, upon receipt of shipping directions from the construction company, and the latter company was to pay for the same thirty days after delivery. Certain extras were thereafter ordered aggregating $48.77, making the total value of the material delivered $734.31. The last material furnished by the Crane Company was delivered January 12, 1900. Payment was not made when

it became due, and a subcontractor's notice of the Crane Company's claim for a mechanic's lien was duly served upon appellants, and the bill in this case was thereafter filed within the time provided by statute.

On February 5, 1900, P. T. Maloney made a verbal subcontract with the Western Engineering & Construction Company to furnish all necessary labor and material to complete the steam fitting and sprinkler work in the elevator building for $584 and furnish all extra labor and material to do extra work in connection with the sprinkler system for $834.

At the time of making the above agreements, the Western Engineering & Construction Company was indebted to Maloney in the sum of $576.72 for work and material done and furnished on the building. On February 6, 1900, Maloney called upon the solicitor and representative of the surety company on bond of the construction company for the purpose of securing payment of the above amount. As a result of the negotiations Maloney executed and delivered to the representative of the surety company a writing addressed to the construction company to the effect that in consideration of receiving payment of the $576.72 he would furnish at cost of not to exceed $50 all necessary and proper fittings and appliances and the pipe to complete in a workmanlike manner the engines and boilers of the elevator. The sum of $576.72 was paid to Maloney at that time, and the work and material called for by the above writing was done and furnished by Maloney within a week from that date at a cost to him of about $90.

During the course of the construction of the steam fitting and sprinkler work upon the elevator prior to the dates of the above agreements, it had developed from time to time that various alterations in the plans and specifications appeared desirable, and a verbal agreement was made on February 5, 1900, by Maloney and Seckner, president of the construction company, that the former should do whatever work was required by appellants and should be paid therefor at the market price of labor and material. The

evidence shows that in accordance with this agreement Maloney did certain work upon the elevator outside of that provided by the above mentioned agreements. The market price of labor and materials included in this work is shown to have been $735.52. The bills for the work and materials were all approved by persons in the employ of appellants, with the exception of a few items.

The claim of Kellogg-Mackay-Cameron Company arises out of a contract with Maloney for furnishing labor and materials upon the above work. In January, 1900, it was agreed between Maloney and the Kellogg-Mackay-Cameron Company that the company should furnish Maloney whatever materials he should need in connection with the work he was doing on the elevator, and also provide him with the funds necessary for his pay rolls. The evidence tends to show that the market price of the materials furnished by the company was $847.26, and the cash advanced for labor was $929.95, aggregating $1,777.21.

The cause was referred to a master, and upon the report of the master being filed, it was heard by the court upon the report and exceptions thereto.

BROWNING & SHEPARD, for appellants.

ALDEN, LATHAM & YOUNG and R. WILSON MORE, for appellees.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

It is urged on behalf of appellants that the liens must fail and the decree must be reversed, because the principal contract does not provide a time for completion within three years, or for payment within one year after the completion thereof, in compliance with section 6 of the Lien Act.

The provisions of the contract between W. H. Merritt & Co., appellants, and the Western Engineering & Construction Company, relating to the time of completion and of payment, are as follows: "And the said party of the second

part agrees to commence work on said elevator within five (5) days from the signing of this contract and to complete the same on or before the first day of December, A. D. 1899." Then follow provisions for a penalty for delay, and for payments on the work which are stated in substance in the statement preceding this opinion. The contract then provides:

"Upon the receipt of the certificate of the inspector that the said elevator has been completed in full compliance with the terms of this contract and is in first-class working order, and that there have been made good such defects as may have been found during the period of ten (10) days' trial provided for in the specifications, and upon the receipt of satisfactory evidence that all claims for material, labor and supplies of every kind furnished for this work have been fully paid and satisfied, and that the plant is free from incumbrances, the party of the first part agrees to accept the said elevator and to pay to the party of the second part the balance that is payable under the terms of the contract."

It is contended that these provisions do not require the elevator to be completed by December 1, 1899, including the test and curing of defects, and does not require final payment within thirty days thereafter; that the contract means that the test and curing of defects shall proceed to completion at once after December 1, 1899, or, in other words, as expeditiously as their nature permits, which is, in effect, within a reasonable time after December 1, 1899, and payment thirty days later.

In our opinion, the true construction of the contract must be and is that it was the duty of the inspector to issue the certificate specified in the contract immediately upon the final completion of the work, and that the work would not be completed in accordance with the specifications and plans so long as there were defects, or, in other words, particulars in which the work did not comply with the plans and specifications. It follows then that the ten days' test was to be made before December 1, 1899, for if it was not made before that date the contract work would not be completed on that date, within the meaning of the contract.

We find no ambiguity in the language of the contract. It would be a strained construction of the language, we think, to hold that it does not require the completion of the work by December 1, 1899; and that the ten days' test and curing of defects should proceed after December 1, 1899, with no fixed time, and therefore a reasonable time thereafter, for the completion thereof. The contract does not express that intention and its terms will not bear that construction. We think, therefore, that the principal contract provided a time for its completion within three years, and for payment within one year after the completion. It follows that this contention of appellants cannot be sustained.

Appellants further claim that there is a fatal variance between the pleadings and proofs in that it is alleged that the title to the premises on which the liens are sought to be established was in William H. Merritt and Eugene L. Merritt, as copartners, whereas the proof is that the title is in the Merritts as tenants in common.

We think that for the purpose contemplated by the lien statute the allegation of ownership was sufficiently accurate and that the proof supports it. The decree declares in legal effect that the principal contract was made with the Merritts for the erection of a certain grain elevator on land owned by William H. Merritt and Eugene L. Merritt. The clause following the names—"copartners doing business as W. H. Merritt & Co.," is mere *descriptio personae*, and does not describe the estate. There is no fatal inconsistency between the petition, proof and decree. Springer v. Kroeschell, 161 Ill. 358.

The evidence shows that appellants expended in the erection of the elevator and plant a sum many thousands of dollars in excess of the contract price of $120,000. It appears that all of this money went into the building. It is contended by appellants upon this state of facts that the petitioners failed to establish the existence of a debt from the owners to the original contractor, and that money paid, even after the service of lien notice, is not money wrongfully paid within the meaning of the Lien Act. Simonton v. Ci-

cero Lumber Co., 108 Ill. App. 481, is cited in support of this proposition. In that case the original contractor abandoned the work. In the case at bar the contractor completed his contract under an agreement with appellants that they would advance the money necessary to complete the work. In the Simonton case the court held that the statement furnished by the contractor was in compliance with section 5 of the Lien Act of 1895, and that accordingly section 33 of the Act did not apply to payments made by the owner to subcontractors named in the statement furnished by the contractor. We do not perceive that the Simonton case has any application to the case before us.

We are unable to agree with this view of the case. The evidence is not very full upon this point, but we think it establishes the fact that all of the $130,000 was paid by the owners to the principal contractor under the contract in question. It is to be presumed that the money was not paid, and would not have been paid before it was due, and there is no showing as to what part of the $130,000 was for extras and what part was paid on the original contract price. The language of the Lien Act is broad. Section 25 provided that upon service of the subcontractor's notice his claim should be a lien as against the owner from the date of the service of such notice, to the extent that the owner may be indebted to the contractor at that time, or may become indebted to him as such contractor thereafter. The evidence also shows that some of the moneys paid after February 24th were for the pay roll of the construction company in direct compliance with the terms of the contract. Under the evidence we conclude that an indebtedness existed from appellants to the construction company at the date of the service of the subcontractor's notice or was to become due under the terms of the contract within the intent of sections 25 and 28 of the Lien Act.

It is urged that the decree is erroneous in that it allowed interest on the subcontractor's claims. Sections 1 and 22 of the Lien Act of 1895 provide for the allowance of interest. Murphy v. Cicero Lumber Co., 97 Ill. App. 510. It

was not necessary for appellees, under the provisions of this Act, to show unreasonable or vexatious delay of payment.

Appellants contend as against the Crane Company, appellee, that the court erred in including in the decree the extras aggregating $48.77, claimed by the Crane Company. The master did not allow this amount for extras, because the petition for the lien did not contain any allegation as to the delivery of the extras. The master, however, found all the facts relating to the extras. The petition was afterwards amended without prejudice to the reference to the master so as to include the extras. The objection is that without objection and exception to the master's report by the Crane Company this was improper. This was not error. "Exceptions relate to matters of fact, and the question whether the master has drawn an incorrect legal conclusion from the facts will be heard without exceptions." Von Platen v. Winterbotham, 203 Ill. 198. The facts were before the court, and the decree based thereon was proper.

It is further contended regarding the Crane Company claim that it must fail, because the evidence does not show that the company agreed to deliver the materials which it furnished within any specified time.

There are two answers to this contention. In the first place where the original contract provides a definite time for the completion of the work, as we hold it does in this case, it must be assumed that the subcontract must be completed at the same time as the original contract, and, therefore, it is immaterial whether or not a time for completion and final payment was provided in the subcontract, for it is subordinate to and controlled by the original contract. This we think is declared to be the law in Von Platen v. Winterbotham, *supra*. In the second place, we think the testimony of Ellicott, supported by that of Murphy, shows that the Crane Company was to furnish the materials by the first day of January, 1900, and payment was to be made therefor thirty days after delivery. The memory of Seckner, the only other witness on this

point, was so poor that his testimony amounts to nothing. The appellants were anxious to have the work, which had then been greatly delayed, completed. It is reasonable and altogether probable, therefore, that a time was fixed for furnishing the materials, as testified by Ellicott, in order that they should be on hand and ready for use when needed. We think the evidence established the fact that by the agreement the delivery of the material was to be made by the first day of January, 1900.

Several objections are urged by appellants against the claims of P. T. Maloney and the Kellogg-Mackay-Cameron Company. These claims are based upon the same state of facts substantially and are governed by the same legal principles, and may therefore be considered together.

The evidence shows that P. T. Maloney is a contractor engaged in contracting for steam fitting and similar construction. The Kellogg-Mackay-Cameron Company is a corporation engaged in the manufacture and sale of plumbers' and steam fitters' supplies. The elevator in question was erected on the lands of appellants and according to the evidence the improvement enhanced the value of the real estate about $150,000.

The claims of Maloney aggregate $2,203.52 and he seeks, and the decree gives him, a lien on the premises for that amount with interest. The claims embrace the four general items indicated in the statement preceding this opinion, and arose substantially as there stated.

The point is made by appellants that Maloney and his subcontractor, the Kellogg–Mackay–Cameron Company, are entirely beyond the letter or reason of the rule stated in Von Platen v. Winterbotham, *supra*, for the reason that Maloney's contract was not made until February 5, 1900, some sixty-five days after December 1st, which was the time limited for the completion of the principal contract, and Superior Lumber Company v. Gottlieb, 102 Ill. App. 392, is cited in support of the contention, wherein it was held that the time fixed for the complete performance of the contract was a time prior to the time of entering into

the contract, and therefore an impossible date for performance was indicated, and that no lien could be established under the contract. We think, however, it is clear under the evidence that at the time of the making of the Maloney contracts the original contract between appellants and the construction company was in full force and effect and was being executed by both parties, who were treating it as in full force and effect. The materials and work for which this claim is made were necessary to fulfill the original contract and complete the building and plant under it, and the modifications of the work which had been made. We have held that the original contract was sufficient to authorize a lien under the lien law and we think that it remained sufficient during the whole time that it was being executed and carried out by the parties to it. If the construction company had paid Maloney for all the labor and materials involved in these claims, it cannot be doubted that the construction company could have maintained a lien for the work and material furnished by Maloney. We think, therefore, that this contention of appellants cannot be sustained.

It is urged that the master and the trial court held that it was unnecessary for the verbal subcontract of Maloney to expressly provide the time for completion of the work within one year from the date of its making and that, therefore, it was immaterial whether or not any definite time was fixed for the completion of Maloney's work. In thus holding we do not think that the decree was erroneous, but whether we are correct in that view or not we think the evidence, although it is contradictory, shows that a definite time was fixed for the completion of the work contracted for by Maloney. It is unreasonable to suppose that at this point in the progress of the work upon the elevator no time should have been fixed. There had been great delay in the completion of the work. The appellants were anxious to have the work completed, and considering all the evidence and the whole situation as disclosed by it, the contention of Maloney that a definite time of four or five weeks from the time of making the contract was fixed

for its completion, seems to us more probable and reasonable than that it was left in the indefinite and unbusinesslike way contended for by appellants.

The further point is made that the lien notice served by Maloney was not within the period defined by the statute. It appears from the evidence that certain purported lien notices of Maloney were served in the evening of May 23, 1900, and another notice was served upon the Merritts on June 4 and 5, 1900, respectively. We need pay no attention to the notice of May 23rd, for that seems to be conceded to have been defective. The question as to whether the notice served on June 4th and 5th was sufficient depends entirely upon whether the last work done by Maloney upon the elevator was done on Sunday, April 8th, and on Wednesday, April 11, 1900. It is conceded that as to form the notice was sufficient. It is also conceded that the last work done prior to the dates above mentioned was done on March 24, 1900, or about that date. It is clear that if the work done on April 8th and 11th cannot be regarded as done under the contract between the parties, or if no work was done upon this date, then the lien must fail for the reason that June 4, 1900, was more than sixty days subsequent to March 24, 1900. The question then to be determined is whether the work done on April 8th and 11th was done under the contract between the parties.

The master found and the decree finds that the work done on April 11, 1900, was not repair work, but was an addition to the equipment designed to render it more complete. The work was done by the express order of the representative of the owners and must be regarded as an extra under the contract. With this finding of the master and the decree we are inclined to agree and to hold that the evidence supports the finding of the decree in that regard and that the notice was therefore served in time. To enter upon a full discussion of the evidence bearing upon the nature and time of the work would be exceedingly difficult within the reasonable limits of this opinion, and for that reason we are compelled to leave the question of fact with a brief expression of our conclusion upon as

careful a study of the evidence as we have been able to give to it, by reading the record as well as the abstract of record.

It was seriously contested before the master and is also contested here, as to whether there was money due or to become due to the principal contractor at the date of the service of the notice of the Maloney claims. Under the provisions of section 25 of the Lien Act a lien can be allowed only so far as the appellants were indebted to the construction company at the time of the service of the Maloney notice or might become indebted to it thereafter. The burden of proof to show such indebtedness therefore rested upon petitioners.

It is shown by the record that a sum approximating $124,000 had been paid by the appellants to the construction company or for its account prior to June 5, 1900, and that a sum in excess of $5,000 was paid by appellants for work done and materials furnished upon the elevator subsequently to that date. It is impossible, we think, to determine from the evidence which of the payments were made for work strictly within the terms of the original contract and which were for extras and as to what extras were ordered and done prior to June 5, 1900, and were paid for thereafter. There is evidence to the effect that payments were made after June 5, 1900, for work done and material furnished in the construction and equipment of the elevator. One of appellants testified that this money was paid under the contract. The elevator had been operated before that date. There was never any settlement between appellants and the construction company of the fifteen per cent. held back under the terms of the contract. It is conceded that the actual cost of the elevator was greatly in excess of the contract price. From this state of facts we conclude that the petitioner has established sufficiently the fact that there was money due or to become due to the construction company exceeding in amount the petitioner's claim, at the time of the service of the notice.

Finding no material error in the decree it is affirmed.

*Affirmed.*