Frank Marshall, Appellant, v. Thoma⁻ Butler et al., Appellees.

## Gen. No. 16,501.

1. MORTGAGES—*apportionment of proceeds of sale where mechanic's lien exists.* Where a decree of foreclosure finds the value of the land and of the improvements separately, and directs that the proceeds of the sale shall be proportionately divided, the part representing the improvements to be paid to mechanic's lien claimants and any surplus to the owner of the equity of redemption, it will be modified to require any deficiency after application of the proceeds of the land to the mortgage to be satisfied from such surplus from the sale of the improvements and the residue only after the satisfaction of said deficiency to be paid to the owner of the equity of redemption.

2. MECHANICS' LIENS—*when claim need not be filed within sixty days.* Where an individual undertakes to construct a building on his own property in the name of a construction company which does not exist but is really the individual, those who furnish material are original contractors and not required to give notice or file claim within sixty days as required of subcontractors.

3. MECHANICS' LIENS—*where intervening petition is filed within four months.* In a suit in chancery to foreclose a trust deed, where a mechanic's lien claimant files an intervening petition within four months from final delivery of material, it is sufficient to defeat the statutory limitation although claim was not filed in the clerk's office.

4. MECHANICS' LIENS—*statute construed liberally.* The Mechanic's Lien Act is construed liberally and technical objections are not justified.

Bill to foreclose deed of trust. Appeal from the Superior Court of Cook county; the HON. GEORGE A. DUPUY, Judge, presiding. Heard in this court at the March term, 1910. Decree modified and affirmed. Opinion filed November 18, 1912. Rehearing denied December 2, 1912.

J. A. COLEMAN and LORENZ & REED, for appellant.

LEROY & PENWELL, IRWIN R. HAZEN, DAVID G. ROBERTSON and ADAMS, BOBB & ADAMS, for appellees.

MR. JUSTICE BROWN delivered the opinion of the court.

The decree from which this appeal is taken was rendered by the Superior Court of Cook County on a bill in chancery filed by the appellant in that Court November 12, 1906, for the foreclosure of a certain trust deed from one Thomas Butler and wife to M. L. Thackaberry, purporting to secure certain promissory notes to the amount of $6,500 and interest, executed by said Thomas Butler and wife, guaranteed by one C. F. Bumann, payable to the order of said Marshall and by said Marshall held and owned. To this bill Thomas Butler, Ellen Butler, Charles F. Bumann, The Chicago Land Loan & Construction Company, Mary Bumann, Pauline McLester, G. W. McLester, her husband, John Wiegman, Henry Frerk, Willis H. Bennett, Jr., A. J. Stinson and N. F. Hand, copartners as Stinson & Hand, The North Side Lumber & Timber Company, Charles Kemintz, J. Charles Schneider, The Novak Mosaic Company, B. F. Novak, the Bonner & Marshall Company, P. F. O'Brien and H. Deming, copartners as P. F. O'Brien Roofing Company, James E. Lill, the Bullard & Gormley Company, the American Crushed Stone Company, Leonard Stradinger, M. L. Thackaberry, Trustee, and Chicago Title & Trust Company, successor in trust, were made defendants.

Except as against Thomas and Ellen Butler and C. F. Bumann and Thackaberry and the Chicago Title & Trust Company, the only allegations of the bill were that the complainant was informed and believed that the defendants claimed some interest in the premises covered by the trust deed as purchasers, mortgagees, judgment creditors, mechanic lien holders, or otherwise, and that said interest, if it existed, was subject

to the lien of the complainant under the trust deed. The premises conveyed by the trust deed were the south one-half of Lot Nineteen in Block Five in Cochran's Addition to Edgewater.

The bill was taken as confessed against Thomas Butler and Ellen Butler, his wife, and against Charles F. Bumann. A personal judgment against them for the amount of the notes is a part of the decree, and it is provided that if, after the proceeds of the sale of the property ordered in the decree have been applied according to the directions of the decree, there is a deficiency in the amount ($8,725) found due to the complainant Marshall, the said Butlers and Charles F. Bumann shall pay the same and the complainant may have execution therefor. The bill was also taken as confessed as against G. W. McLester, John Wiegman, B. F. Novak and Chicago Title & Trust Company, and as no interest on their part is recognized or considered by the decree, they require no further mention in this opinion.

The Bullard & Gormley Company, The American Crushed Stone Company and Leonard Stradinger each answered the bill as the recitals of the decree show; but the decree finds that they failed to adduce proofs in the cause, and their "intervening petitions" are dismissed. The record, which is by *praecipe*, does not disclose the nature of their answers, but in view of the answers of the various defendants, to whom relief was given by the decree, we may assume that they were in the nature of intervening petitions for the establishment of a lien. Their dismissal, which is not complained of, takes the alleged interests of these parties also out of the case.

Nothing of any sort appears in the transcript of the record subsequent to the bill concerning P. F. O'Brien and H. F. Deming, nor anything but an order of default and a vacation of said order concerning Willis H. Bennett, Jr., except as he was complainant in another suit, of which part of the record was produced in evi-

dence. They are therefore not factors in the matter before us.

M. L. Thackaberry, Pauline McLester, Mary Bumann and the Chicago Land Loan & Construction Company were also defaulted and the bill taken as confessed against them, according to the recitals of an order of court appearing in the transcript under date of May 10, 1907,—a recital repeated in the decree as to all of said parties except the Chicago Land Loan & Construction Company, although as to Pauline McLester the order of May 10, 1907, seems to have been vacated on May 20, 1907. If she availed herself of the leave then given to answer, however, it does not appear in this *praecipe* record, and the decree negatives it.

The scope of the litigation and the terms of the decree require, however, the statement of the relation of these parties to the transactions involved.

Thackaberry was the trustee in the trust deed foreclosed. Pauline McLester was the person in whom, by mesne conveyances from Thomas Butler to Mary Bumann and from Mary Bumann to Pauline McLester, after the trust deed was executed, the equity of redemption in the property in question rested at the time of the decree.

The Chicago Land Loan & Construction Company is described in the bill of complaint as "a corporation." Service of process on it does not appear in the transcript, although the *praecipe* calls for "process and service." The order of May 10th, 1910, before mentioned, recites that it had filed an appearance but failed to answer. The report of the master, to whom the cause was referred during the progress of the litigation, finds that at a certain date "a so-called corporation named the Chicago Land Loan & Construction Company," began the improvement of Lots 19 and 20 in Block Five in Cochran's Addition to Edgewater by certain buildings, that the President, Manager and controlling spirit of said "alleged corporation" was C. F. Bumann, and that the said Chicago Land

Loan & Construction Company was the beneficial owner of the premises in the trust deed described, being the south half of Lot 19 aforesaid.

The decree describes the Chicago Land Loan & Construction Company as a defendant, and finds that it entered into various contracts hereinafter noted, and that it was the beneficial and equitable owner of the premises described in the bill of complaint, but that for sake of convenience and for the purpose of consummating a loan on said premises, it kept the title first in the name of Thomas Butler and subsequently in the name of Mary F. Bumann. The decree does not describe the Company as "a corporation," and the evidence shows, as we read it, that there was never an incorporation of the "Chicago Land Loan & Construction Company," but that this was the style under which the defendant, Charles F. Bumann, did the business involved in this litigation.

The other defendants were Henry Frerk, A. J. Stinson and M. F. Hand, copartners as Stinson & Hand, the North Side Lumber & Timber Company, Charles Kemnitz and J. C. Schneider, copartners as Kemnitz & Schneider, the Novak Mosaic Company, the Bonner & Marshall Company and James E. Lill. Each of these individuals and copartnerships filed an answer to the bill, setting up a mechanic's or material man's lien on the premises in question superior to that of the complainant under his trust deed. Each of the answers was in the nature of a cross-bill or intervening petition, and asked that the lien which it set forth should be declared and enforced. All but the answer or petition of Frerk asserted that at the time of the contract to furnish material or labor by the defending petitioner, "the defendant Chicago Land Loan & Construction Company, a corporation, was, as beneficial owner and with the consent of Mary Bumann, improving the premises described in the bill; that the title to said premises stood in the name of Mary Bumann, but as a matter of fact said premises actually and equitably

belonged to said Chicago Land Loan° & Construction
Company, and that said Company placed and main-
tained the title in said Mary Bumann for its sole use
and benefit.''

The ''answer and intervening petition and cross-
bill'' of Henry Frerk, as he denominates his pleading,
asserts that at the date of his contract Mary Bumann
was the owner of the premises, and that ''with the
knowledge, permission and authority of the complain-
ant she was engaged in the construction of a certain
building on said land, having for her agent one Charles
F. Bumann, whom she had authorized and permitted
to act for her,'' and who made a.contract for building
material with said Frerk. This petition does not men-
tion the Chicago Land Loan & Construction Company.

The decree after finding as before stated, that there
is due the complainant $8,725 and that he has a sub-
sisting lien for said amount on the premises described
in the bill of complaint, finds that said lien is subject
to the respective liens of the defendant petitioners be-
fore named ''as hereinafter set forth;'' that Stinson
and Hand have such a lien for lumber and mill work to
the amount of $504.10, with interest from September
14, 1906; that Kemnitz and Schneider have a lien for
brick to the amount of $410.38, with interest from June
1, 1906; that the North Side Lumber & Timber Com-
pany has a lien for lumber to the amount of $148.04
with interest from July 10, 1906; that Bonner & Mar-
shall have a lien for brick and other material to the
amount of $18.53 with interest from June 14, 1906; that
James E. Lill has a lien for building materials to the
amount of $110.17; that Henry Frerk has a lien for
building materials to the amount of $108.55 with inter-
est from July 3, 1906; and that the Novak Mosaic Com-
pany has a lien for labor and materials to the amount
of $57.50.

After the finding before named as to the beneficial
and legal ownership of the premises described in the
bill of complaint, the decree proceeds to find that each

of the lien claimants within four months after the completion of the respective contracts filed statements of the lien in the clerk's office of the Circuit Court of Cook County, and that "the lien of the mechanic's claimants are prior and paramount liens upon the improvements erected upon the premises described in the decree, and that the lien of Frank Marshall, complainant, is a prior and paramount lien upon the land;" that the value of the whole property is $6,800, of which the value of the land is 15/68 or $1,500 and of the improvements 53/68 or $5,300.

The decree proceeds:

"The court therefore finds that in the event of the sale of the premises herein involved the amount realized by such sale shall be divided and applied as follows:

1st. Toward the payment of all costs due the officers of this court.

2nd. 15/68 of the amount thus realized from the said sale shall be applied toward the payment of the costs of said complainant and the amount found by this decree to be due the said complainant, and if the same is sufficient to pay the costs and the amount due the said complainant in full and there should remain any surplus, then the surplus, if any, should be paid to the defendant Pauline McLester.

3rd. 53/68 of the amount realized from the sale of the premises directed to be sold by this decree, if the same shall be sold, shall be applied pro rata in payment of costs of the respective lien claimants and then to the payment pro rata of the amount found to be due the respective lien claimants, and in the event that the same is sufficient to pay the costs and the amounts due in full and there should be any surplus, then the surplus, if any, should be paid to the defendant Pauline McLester."

The decree then in the usual terms orders the sale of said property by a master and the distribution of the proceeds in accordance with the decree unless Thomas Butler and Ella Butler, or some of the defend-

ants, within three days pay to the complainant $8,725 and to the various lien claimants the amounts respectively found due them.

It is difficult to obtain a clear idea from the assignments of error exactly what is and what is not complained of in the decree, but it is evident the complainant Marshall, who is the appellant, contends that each and every one of the findings and orders in favor of the mechanic lien claimants is incorrect and that in each case the "petition" contained in the "answer" of said lien claimant should have been dismissed.

Although the various claims are treated and have been discussed in the printed oral arguments to a great extent separately, most of the objections made to the order in favor of any one are urged to the orders in favor of the others. There are some exceptions to this, but the consideration of the decree, so far as it is in favor of any one of the defendants or intervening petitioners, will practically serve for the disposition of the others as well.

But before stating the circumstances concerning the original transaction out of which both the claims for liens on the property covered by the trust deed, and the objections thereto urged by appellant in his arguments sprang, we must advert to a patent and obvious error on the face of the decree, which requires its modification in a most material point, even if it can, as so modified, be affirmed. It is covered by the general assignment of error, and we called attention to it during the oral argument, although it does not seem to be mentioned in the briefs.

The decree, which finds that the value of the land without the improvements is 15/68 and the value of the improvements without the land 53/68 of the value of the entire property taken together, and that while the mortgage lien and the mechanics' liens are each and all liens on the entire property, the mortgage lien is prior as to land and the mechanics' liens prior as to improvements, also finds, first, that 15/68 of the

amount realized on a sale of the entire property shall be applied to the mortgage lien, and if that mortgage lien is satisfied by less, *then the surplus of said 15/68 shall be paid to Pauline McLester, the holder of the equity of redemption.*

This is correct enough, for the amount of the mortgage lien is more than $8,725, and the amount of the mechanics' liens without interest and costs only $1,357.57. It is therefore manifest that if 15/68 of the amount realized on a sale would more than satisfy the mortgage lien, 53/68 would more than satisfy the mechanics' liens. But the decree also finds, secondly, that 53/68 of the amount realized shall be applied to the mechanics' liens, and if it more than satisfies them, the surplus of this 53/68 shall also *be paid to Pauline Mc-Lester*. This is manifestly wrong, for it certainly does not follow that if the property sold for a sum of which 53/68 was greater than $1,357.57, 15/68 of said sum would be as much as $8,725.

If the property sold, for example, for the sum found by the decree to be its value, $6,800, under this order of the decree Marshall, the complainant, would get $1,500, leaving a deficit in his claim of more than $7,225, the lien claimants would get their claims in full, and Pauline McLester would get approximately $3,900. The error and injustice of this are manifest. The decree should provide that after the mechanic lien claimants are paid in full out of 53/68 of the amount for which the premises are sold, any surplus should be first applied to make up any deficiency in the complainant's mortgage claim after the 15/68 was credited, and only after that was satisfied in full should the surplus, if any, go to Pauline McLester. The error is too obvious to need further mention. We turn to the mechanic lien claims and the circumstances from which they arose.

The wife of the complainant Marshall owned, or at least held, the title to Lots 19 and 20 in Block Five in Cochran's Addition to Edgewater. These lots to-

gether have a frontage of one hundred feet on a street in Chicago.  Lot 20 lies north of Lot 19.

Mrs. Marshall and her husband, the complainant, under date of February 14, 1906, entered into a written agreement with one Charles F. Bumann, who seems to have been ''a plunger'' in real estate and building operations, by which it was recited that Bumann desired to purchase these two lots and agreed that the Marshalls should sell them to him for $6,500, one thousand dollars to be paid on or before six months from date, one thousand dollars on or before one year from date, and four thousand five hundred dollars on or before two years from date.

This purchase price of $6,500 for the entire property was all to be secured by a first mortgage on the south 25 feet of the premises only—that is, on the south half of Lot 19, but said south half of Lot 19 was to have placed upon it and consequently subjected to the mortgage a ''two flat'' building.  No further specifications of the nature of value of the building was made by the contract.  It was, however, provided, that each 25 feet of the premises—that is, the north half of Lot 20, the south half of Lot 20 and the north half of Lot 19—should, as well as the south half of Lot 19, be similarly improved by a ''two flat'' house, and that building operations should be begun within fifteen days from the date of the contract.

The following provisions are a part of the contract:

''It is further agreed that on the premises so mortgaged as above stated all liens of every name, nature and description shall be removed at or before the delivery of the title above named.

''It is further agreed that this contract shall be put in escrow, together with the deed, mortgage and notes securing said sum of sixty-five hundred dollars ($6,500) with M. L. Thackaberry, to be by him held until the terms of this agreement shall have been consummated.''

If these provisions were inserted in good faith and

had been carried out in good faith, they would have been sufficient for the protection of the complainant, to whom alone the notes ran.

Perhaps Marshall was of the opinion that they would be so carried out. This would have required, however, resources in cash or credit which Bumann evidently did not have.

Lots 19 and 20 were conveyed by the complainant and his wife to one Thomas Butler by a deed dated the same day as the contract, and acknowledged on the next day; and the notes provided for, and a trust deed from Thomas Butler and Ellen Butler, his wife, to Thackaberry on the south half of Lot 19 to secure them were also executed under the same date of February 14, 1906. The notes were signed by Thomas Butler and Ellen Butler and guarantied by indorsement by Charles F. Bumann. The trust deed was acknowledged on February 21, 1906. One week afterward, on February 28, 1906, the deed from the Marshalls to Butler and the trust deed from the Butlers to Thackaberry were placed on record. This was certainly in direct violation of the spirit and apparent intention of the agreement that they were to be held by Thackaberry in escrow until all liens should be removed, for although there were at that time perhaps no liens on the property, an application had been made to mortgage brokers by "Thos. Butler by C. F. Bumann" for a building loan of $4,250 on each of the three other parcels of 25 feet in Lots 19 and 20. These loans were made, and it is impossible to resist the conclusion from a consideration of all the evidence in this regard, that the scheme so far as Bumann and Thackaberry were concerned, was to secure money enough on these three loans to erect, and free from liens, four instead of three buildings, one of which should be on the south half of Lot 19 and be covered by the trust deed to Thackaberry for the benefit of complainant.

Butler was only the representative of Bumann and a dummy in the transaction. Thackaberry was to all

appearance the agent and attorney of both Marshall and Bumann.  He engineered the whole transaction. Whether it was with the actual and expressed consent and approval of Marshall that the deeds were put on record and the mortgages on the north 75 feet of the premises made possible, does not appear; but Thackaberry was not only Marshall's attorney in the inception of these matters, but in the foreclosure of the trust deed and the contentions over the mechanics' liens. It is by no means improbable, it seems to us, that in reliance on the expectation that his attorney, Thackaberry, would bring the matter to a satisfactory conclusion, he viewed the transaction as one in which he could sell the Lots 19 and 20 for a sum somewhat more than the evidence in the record would seem to show was their market value.  This would furnish a motive for an acquiescence in the arrangement, which would otherwise be inexplicable.  However, this may be, we think he must be held affected with notice of all that went on through his agent and attorney, Thackaberry, who was undoubtedly acquainted with it.

We hold from the evidence that Bumann was at all times the beneficial owner of the property after the conveyance by the Marshalls to Butler.  There is much in the record concerning the "alleged" and the "so-called" corporation, "The Chicago Land Loan & Construction Company."  As before stated, all the answers or "intervening petitions" except Frerk's, speak of the contracts under which liens are respectively claimed as made with this "Company," and call it a corporation, and the decree, without describing it as a corporation, finds that it was the beneficial and equitable owner of the premises sought to be foreclosed.

The arguments of counsel in the case and the witness Meek speak of the Company as a copartnership composed of Bumann and one Coleman.  We find the entire evidence, taken together, however, fairly to establish that the "Company" was neither a corporation

nor a copartnership, but a name and style assumed for purposes of his own by Bumann to do this business under, Bumann has decamped. The money raised on the "Straus" mortgages on the three 25-foot parcels to the north of the premises under foreclosure here, was not sufficient to carry out the scheme. The equity of redemption of the south half of Lot 19 was first conveyed by the Butlers to Mary F. Bumann, a sister of C. F. Bumann, for a nominal consideration (in April, 1906) and then, with the remainder of Lots 19 and 20, by Mary F. Bumann to Pauline McLester for a like nominal consideration (Sept. 5, 1906).

Holding as we do, that the Chicago Land, Loan & Construction Company was Charles F. Bumann, all the objections made to the decree by the appellant which depend on the position that the various defending petitioners were actually subcontractors, disappear. Such is the objection based on a failure to give notices or file claims within sixty days from the completion of the contracts.

The various claimants either proved that they filed their statements of claim in the Circuit Court Clerk's office within four months of the date of final delivery of their material and completion of their contract, as found by the master, or as in the case of the Novak Mosaic Company, (which omitted to prove the filing of the statement of claim) they filed their intervening petition within four months of such completion. Stinson & Hand did both. The error in the finding of the decree (without evidence of it) that the Novak Mosaic Company filed its claim like the others in the clerk's office of the Circuit Court, an error which was not pointed out in the objections to the master's report, becomes entirely immaterial and harmless in this view, for either bringing the proceedings or filing the claim within four months defeats the limitation against an original contractor.

The appellant, however, maintains that if the claimants are to be considered as original contractors, their

statements of claim as filed and their pleadings are inconsistent with that view—so inaccurate and erroneous indeed as, by themselves, to render the order in the decree in their favor erroneous. The decree moreover is in that case erroneous, it is contended, in finding the Chicago Land Loan & Construction Company the beneficial owner. These are technical objections, not justified under the spirit of the Act, which declares itself to be a remedial Act to be liberally construed.

We think that the reasoning of the opinion of the Supreme Court both in Springer v. Kroeschel, 161 Ill. 358, and City of Salem v. Lane & Bodley Co., 189 Ill. 594, and the construction given to the Act in those cases, are applicable to the one at bar.

As for various points made by the appellant on the weight of evidence being contrary to the findings of the master and the decree, careful investigation of the record fails to show us any justification for our interfering with the decree, except as noted. We do not think the amounts for which the south half of Lot 19 is held subject to the lien are incorrectly found, nor that there is any ground to demand, as complainant terms it, "a marshaling of assets." Neither the phrase nor the doctrine is applicable to any facts in the present controversy, we think.

But as the flagrant error in the decree which we first noted demands its serious modification, we must adjudge the costs of this appeal against the appellee and in favor of appellant.

The decree will be modified by the substitution in the decree for these words:

"3rd. 53/68 of the amount realized from the sale of the premises directed to be sold by this decree, if the same shall be sold, shall be applied pro rata in payment of costs of the respective lien claimants, and then to the payment pro rata of the amount found to be due the respective lien claimants and in the event that the same is sufficient to pay the costs and the amounts due

in full and there should be any surplus, then the surplus, if any, should be paid to the defendant Pauline McLester,''

The following:

"3rd. 53/68 of the amount realized from the sale of the premises directed to be sold by this decree, if the same shall be sold, shall be applied pro rata in payment of the costs due to the respective lien claimants, and then to the payment pro rata of the amounts found to be due the respective lien claimants, and in the event that the same is sufficient to pay said costs and said amounts due the respective lien claimants in full, then the surplus, if any, shall be applied first towards the payment of any part of the sum found due the complainant herein which 15/68 of the amount realized from the sale has left unpaid, and in the event that said surplus should fully satisfy said sum, if any, so found still due the complainant, and there should still be a remainder, (but only in said event) said remainder shall be paid to the defendant Pauline McLester.''

The decree as thus modified will be affirmed.

*Affirmed.*