M. F. LOUGHRAN *et al.* Appellees, *vs.* JOHN A. GORMAN, Appellant.

*Opinion filed October 26, 1912—Rehearing denied Dec. 4, 1912.*

1. ESTOPPEL—*general rule where party fails to assert his interest in land.* It is a general rule that if a person interested in an estate knowingly misleads another into dealing with the estate as though he were not interested he will be postponed to the rights of the party so misled; and this rule applies to one who knowingly suffers another to deal with land as if it were his own, and who knowingly permits another to expend money for improvements without giving notice of his own claim.

2. SAME—*acquiescence by mere silence may operate as an estoppel in equity.* It is the duty of a person having a right, to assert it when he sees another about to commit an act infringing upon it; and acquiescence consisting of mere silence may operate as an estoppel, in equity, to preclude a party from asserting legal title or rights in property.

3. SAME—*when a party is estopped to assert title as against mortgagees.* One whose ownership of a lot is not disclosed by the records, which, under the peculiar circumstances, indicate that the lot is owned by his mother, is estopped to assert his title to defeat mortgages given by the mother, where he knew of the fact of his ownership at the time the loans were made and was acting as his mother's agent in collecting rents but did not disclose his ownership to the mortgagees.

4. LIMITATIONS—*when the mother does not hold possession adversely to son.* Where the legal title to a lot descends, by opera-

tion of law, to an infant son upon the death of his father, the possession of the lot by the mother from the time of her second husband's death until the son became of age is not adverse to the son so as to ripen into a perfect title in her.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

J. L. O'DONNELL, T. F. DONOVAN, and J. A. BRAY, for appellant.

BARR, McNAUGHTON & BARR, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a bill filed in the circuit court of Will county in 1904 by appellees, alleging that they were the owners of several notes secured by trust deeds on a certain lot in Joliet, Illinois, and asking for the foreclosure of said trust deeds. After the pleadings were settled a hearing was had on the supplemental bill and answer before the court and decree entered in accordance with the prayer of the supplemental bill. From that decree an appeal was prayed to the Appellate Court for the Second District. Mr. Presiding Justice Dibell of that court having been the judge before whom the case was tried in the circuit court, took no part in its consideration in the Appellate Court. The other two Appellate Court justices were divided in opinion as to whether the decree should be affirmed or reversed, and it was thereupon affirmed by operation of law. A certificate of importance was granted, and this appeal followed.

The record shows that John Gorman obtained a warranty deed to the lot in question July 26, 1873. It was then vacant and unoccupied. January 8, 1875, he married Mary E. Daly in Will county. He died as the result of an accident November 19, 1875, intestate, and his estate

was never administered. John A. Gorman, the. appellant, was born as the issue of this marriage, February 2, 1876. His mother, Mary E. Gorman, married another John Gorman (cousin of her former husband) June 6, 1877. The second John Gorman and his wife built a house upon the lot in 1881 and moved into it. He paid the taxes on the property from 1879 until his death, and in 1880 built a stone sidewalk in front of it by order of the city council. In this home he raised seven children born of his marriage with Mary E. Gorman. John A. Gorman was raised in the family of the second John Gorman as one of his own children, and continued as a member of that family after the death of his step-father until he was over twenty-five years old. The second John Gorman died testate in 1895, willing his property, real and personal, to his wife. After his death the widow, in January, 1898, married James M. Finnegan, and during that year built a second house on the lot in question. In July, 1898, a trust deed was placed on the property to secure a loan of $1300, a portion of which was used to pay off a loan made for the purpose of building the house. Several loans had previously been made by Mary E. Gorman and the second John Gorman, secured by mortgages or trust deeds on the lot. In September, 1899, Mary E. Finnegan borrowed $500, and again on March 27, 1900, she borrowed another $500, and on January 7, 1901, she borrowed $300, and in May, 1901, she borrowed $200, securing the loans each time by a separate trust deed on the lot. All of these five loans, with interest, the decree found due and unpaid. There is no controversy in the record as to the foregoing facts. Mary E. Finnegan was stricken with paralysis in 1901 and taken to a hospital. From that time until her death, in 1907, she was unable to talk, and the evidence tends to show that she became feeble-minded.

There is a conflict in the evidence as to when John A. Gorman first knew that he was not the son, but only the

step-son, of the second John Gorman. He himself testi-
fied that he did not learn of it until his mother's sickness,
in 1901; that he had heard rumors of it many times be-
fore and had asked his mother several times and she had
always denied it. One of his half-brothers testified that
John A. Gorman told him in 1898, after their mother mar-
ried Mr. Finnegan, that he owned the lot and could make
trouble about it if he wanted to. There is some testimony
in the record tending to show that he knew of it before
or about the time he became of age, in 1897. The decree
found that appellant, before arriving at the age of twenty-
one years and before the second house was constructed on
said lot, learned that he was the son of the first John Gor-
man; that appellant was seized in fee of the lot in ques-
tion as the sole heir of the first John Gorman, subject to
the dower of his mother; that he knew in 1898 the sec-
ond house was being built on the property, and, notwith-
standing he knew that he was the owner of the fee title,
acquiesced in his mother's making the improvements, ob-
taining loans and securing the same by mortgages or trust
deeds on the property.

It is contended by counsel for appellees, but denied by
counsel for appellant, that this decree is sustainable on the
theory of equitable estoppel as against appellant. The gen-
eral rule is, that if a person interested in an estate know-
ingly misleads another into dealing with the estate as if he
were not interested, he will be postponed to the party mis-
led. This rule applies to one who knowingly suffers another
to deal with land as if it were his own, and who know-
ingly suffers another to expend money for improvements
without giving notice of his own claim. (2 Pomeroy's Eq.
Jur.—3d ed.—sec. 807.) Acquiescence consisting of mere
silence may operate as an estoppel in equity to preclude a
party from asserting legal title and rights of property. All
instances of this kind rest in equity upon the principle that
"where a man has been silent when in conscience he ought

256 — 4

to have spoken, he shall be debarred from speaking when conscience requires him to be silent." (*Niven* v. *Belknap,* 2 Johns. 573; Bigelow on Estoppel,—5th ed.—586; 2 Pomeroy's Eq. Jur.—3d ed.—sec. 818.) In discussing this principle, this court, in *Anderson* v. *Armstead,* 69 Ill. 452, said: "The law is familiar that where the owner of property holds out another, or allows him to appear, as the owner of or as having full power of disposition over the property, and innocent parties are thus led into dealing with such apparent owner or person having the apparent power of disposition, they will be protected. Their rights, in such cases, do not depend upon the actual title or authority of the party with whom they have directly dealt, but they are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power he caused or allowed to appear to be vested in the party upon the faith of whose title or power they dealt." To the same effect are *Springer* v. *Kroeschell,* 161 Ill. 358, and *Bastrup* v. *Prendergast,* 179 id. 553. It is the duty of a person having a right, to assert it when he sees another about to commit an act infringing upon it. *Milligan* v. *Miller,* 253 Ill. 511; see, also, *Collier* v. *Pfenning,* 34 N. J. Eq. 22; *Morgan* v. *Railroad Co.* 96 U. S. 716; 1 Jones on Mortgages,—5th ed.—sec. 138*a; Robbins* v. *Moore,* 129 Ill. 30.

The record evidence of title did not disclose that there were two John Gormans who were each the husband of appellant's mother. Nothing was shown of record as to the death of the said first John Gorman, and the second John Gorman managed and controlled the property, paying taxes thereon for several years before the first building was erected, in 1881, until his death, in 1895, and his widow, the mother of appellant, continued in control until her stroke of paralysis, in 1901. The second John Gorman by will left all of his property to his widow. One examining the record title at the time these loans were made

would quite naturally assume that the John Gorman who purchased this lot left it by this will to appellant's mother. Appellant himself said or did nothing during all those years, either before he was of age or after, that in any way questioned his mother's title to this property or the right of his mother and step-father to manage and control it.   There is evidence in the record tending to support the finding of the decree that he knew he was a step-son of the second John Gorman, and of his title to the property, before or about the time he became of age.   There is no evidence in the record, except his own statement, that he was ignorant of his family history and legal rights until after his mother's stroke of paralysis.   The chancellor saw the witnesses and was better able to judge of their testimony than is a court of review.   We think the finding of the chancellor as to the time appellant received knowledge of his rights is borne out by the record.   If that is true, he then not only passively stood by, knowing his rights and leading innocent persons into dealing with his mother as if she were the owner, but he actively took part in her management of the property, collecting rents from tenants for her in 1899 and 1900, both before and after the making of some of these loans, as her agent, and signing receipts in her name.   On this record we think he is estopped, upon sound legal principles as well as upon principles of right and justice, to assert his title as against the owners of the notes in question.

The trial court, in its decree, held that the appellant's mother, after the death of the second John Gorman, remained in open, adverse possession of the lot against everyone except appellant.   Appellees filed cross-errors, insisting that the second John Gorman held adverse possession of the premises from the time of his marriage to appellant's mother until his death, and that the widow continued in such adverse possession until 1901; that the adverse possession of the step-father, and of the widow as his devi-

see, had, before the appellant made his claim against this property, in August, 1901, ripened into a perfect title in said widow as against appellant, and the trial court should have so held. Without passing on the question whether the possession of the step-father was adverse to appellant, we are disposed to hold, on the facts in this case, that appellant's mother did not hold possession of this property adversely to him from the death of her second husband until appellant became of age. This conclusion is in accord with the holdings of this court in *Reuter* v. *Stuckart*, 181 Ill. 529, and *Kirby* v. *Kirby*, 236 id. 255, and cases there cited.

The decree found that appellees were entitled to a lien on only two-thirds of the value of the premises, as the proof showed that the improvements were worth approximately two-thirds of said value; that the said premises be divided and sold in separate tracts, and appellant be permitted to arrange for the payment of the amount found due within sixty days from the date of the decree. Appellees urge that they are entitled to a lien on the entire property solely on the ground of adverse possession by the mother and step-father. As we have stated, they are not entitled to it on this ground, and not having insisted in their briefs on such a lien on the ground of equitable estoppel, under the rules and practice of this court (235 Ill. 14, rule 15,) they are not entitled to it on the latter ground. We do not decide that appellees would have been entitled to a lien on the entire property on the ground of equitable estoppel had that question been properly raised.

Counsel for the appellant further insist that the wife of John A. Gorman was a necessary party to the suit. We find nothing in the record to show that he is married.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*